GARLAND, Appellant,

v.

SEVEN SEVENTEEN CREDIT UNION, INC., et al.; Brodell et al., Appellees.

[Cite as *Garland v. Seven Seventeen Credit Union, Inc.*, 184 Ohio App.3d 339, 2009-Ohio-5214.]

Court of Appeals of Ohio,
Eleventh District, Trumbull County.

No. 2008-T-0098.

Decided Sept. 30, 2009.

---

McLaughlin & McCaffrey, L.L.P., and Dennis P. Zapka, for appellant.

Roetzel & Andress, Stacy Ragon DelGros, and Douglas G. Leak; and Martin F. White Co., L.P.A., and Martin F. White, for appellees.

TIMOTHY P. CANNON, Judge.

{¶ 1} Appellant, Kim Garland, appeals the judgment entered by the Trumbull County Court of Common Pleas. The trial court granted a motion for summary

judgment filed by appellees, James David Brodell, M.D., and James David Brodell, M.D., Inc. (we will refer to appellees collectively as "Dr. Brodell").

{¶ 2} Garland worked at Seven Seventeen Credit Union, Inc. ("Seven Seventeen") for approximately 15 years. In 2005, Garland was a teleservices representative. This position involved assisting customers with various problems and processing loan applications over the telephone.

{¶ 3} On April 24, 2005, Garland fell at her mother's house and hit her right elbow on the tile floor. She went to St. Joseph's Urgent Care, where she was diagnosed with a broken elbow. The urgent-care physician advised her to follow up with a family physician.

{¶ 4} Garland followed up with Dr. Brodell. Dr. Brodell confirmed that Garland's right elbow was broken, diagnosing her with a radial head fracture. Dr. Brodell told Garland to keep her right arm in a sling. Dr. Brodell gave Garland an "off-work" slip indicating that she was to be off work for two months.

{¶ 5} Garland turned the off-work slip into Seven Seventeen. Seven Seventeen requested that Garland fill out a form for leave pursuant to the Family Medical Leave Act ("FMLA"). The form was sent to Dr. Brodell. Dr. Brodell completed certain portions of the form, advising that Garland was to be off work until June 27, 2005. The form was forwarded to Seven Seventeen. After receiving the FMLA form, Seven Seventeen sent a letter to Dr. Brodell, asking whether Garland could return to work on May 9, 2005, if her job duties were modified. Dr. Brodell responded to the letter with a handwritten notation that Garland could return to work on May 9, 2005, on the condition that she not use her right arm.

{¶ 6} Garland returned to work on May 10, 2005. Her revised job duties were to file, alphabetize letters, and proofread forms. On May 12, 2005, while at work, Garland bumped her injured elbow on a file cabinet. She went to St. Joseph's emergency room. The doctors there evaluated Garland and determined that there was no further damage to her elbow.

{¶ 7} After this second incident, Garland followed up with Dr. Tom Jones on May 18, 2005. Garland continued to work in her revised job duties after bumping her elbow at work until her initial appointment with Dr. Jones. Dr. Jones provided Garland with an off-work slip, and she did not work for several weeks after seeing Dr. Jones. About three or four weeks after her initial appointment with Dr. Jones, Garland was no longer required to use the sling. Thereafter, she returned to her regular job at Seven Seventeen, in the same capacity as before her injury.

{¶ 8} Garland filed a complaint for disclosure of confidential information against Dr. Brodell and Seven Seventeen. Garland claimed that she did not

authorize Dr. Brodell to respond to the follow-up letter from Seven Seventeen. Both Seven Seventeen and Dr. Brodell filed answers to Garland's complaint.

{¶ 9} Dr. Brodell filed a motion for summary judgment. Dr. Brodell attached several items to his motion, including a copy of the FMLA form he completed on behalf of Garland and a copy of his response to the inquiry from Seven Seventeen about Garland returning to work on May 9, 2005. Garland filed a brief in opposition to Dr. Brodell's motion for summary judgment. Among other items, Garland attached a copy of Dr. Brodell's answers to her first set of interrogatories, requests for admissions, and requests for production of documents. Dr. Brodell filed a reply to Garland's brief in opposition to his motion for summary judgment. In addition to the documents attached to the parties' submissions, the depositions of Garland, Dr. Brodell, and one of Dr. Brodell's employees, Karen Palmer, were filed for the trial court's consideration. The trial court granted Dr. Brodell's motion for summary judgment.

{¶ 10} Garland's claims against Seven Seventeen were dismissed pursuant to a stipulated dismissal entry.

{¶ 11} Garland raises the following assignment of error:

{¶ 12} "The trial court erred to the prejudice of appellant in granting appellees' motion for summary judgment."

{¶ 13} In order for a motion for summary judgment to be granted, the moving party must demonstrate:

{¶ 14} "(1) [N]o genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made." *Mootispaw v. Eckstein* (1996), 76 Ohio St.3d 383, 385, 667 N.E.2d 1197.

{¶ 15} Summary judgment will be granted if "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of facts, if any, * * * show that there is no genuine issue as to any material fact * * *." Civ.R. 56(C). Material facts are those that might affect the outcome of the suit under the governing law of the case. *Turner v. Turner* (1993), 67 Ohio St.3d 337, 340, 617 N.E.2d 1123, quoting *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202.

{¶ 16} If the moving party meets this burden, the nonmoving party must then provide evidence illustrating a genuine issue of material fact, pursuant to Civ.R. 56(E). *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. Civ.R. 56(E) provides:

{¶ 17} "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party."

{¶ 18} Summary judgment is appropriate, pursuant to Civ.R. 56(E), if the nonmoving party does not meet this burden.

█ {¶ 19} Appellate courts review a trial court's entry of summary judgment de novo. *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153. "*De novo* review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial." *Brewer v. Cleveland Bd. of Edn.* (1997), 122 Ohio App.3d 378, 383, 701 N.E.2d 1023, citing *Dupler v. Mansfield Journal* (1980), 64 Ohio St.2d 116, 119–120, 18 O.O.3d 354, 413 N.E.2d 1187.

█ {¶ 20} "In Ohio, an independent tort exists for the unauthorized, unprivileged disclosure to a third party of nonpublic medical information that a physician or hospital has learned within a physician-patient relationship." *Biddle v. Warren Gen. Hosp.* (1999), 86 Ohio St.3d 395, 715 N.E.2d 518, paragraph one of the syllabus.

{¶ 21} Garland claims that Dr. Brodell's response to Seven Seventeen's inquiry about whether she could return to work at an earlier date with revised job duties constitutes an unauthorized release of her medical information. Dr. Brodell claims that he was operating under Garland's consent when he replied to Seven Seventeen's inquiry.

{¶ 22} During Garland's deposition, the following colloquy occurred:

{¶ 23} "Q. Did you understand that by asking for time off work and by providing this form to Dr. Brodell, that he was going to fill it out and give it back to your employer?

{¶ 24} "A. Yes.

{¶ 25} "Q. Did you understand that he was going to be telling your employer the diagnosis for your injury?

{¶ 26} "A. Yes.

{¶ 27} "Q. Did you understand that he was going to be giving your employer an opinion as to how long you would have to be off work?

{¶ 28} "A. Yes.

{¶ 29} "Q. That's the whole point of the form, isn't it?

{¶ 30} "A. Yes."

{¶ 31} Garland acknowledged that she authorized Dr. Brodell to provide her diagnosis and anticipated return date to Seven Seventeen. However, she claims that her original consent terminated when Dr. Brodell submitted the original version of the FMLA form to Seven Seventeen. Thus, she contends, Dr. Brodell did not have her consent to respond to Seven Seventeen's inquiry about whether Garland would be permitted to perform alternative job assignments. In fact, Garland claims that Seven Seventeen had already accepted the certification from the doctor and approved the leave. However, the FMLA form was signed on April 27, 2005. The employer's letter in response was sent May 3, 2005. There is nothing whatsoever in the record to reflect that this certification had been "accepted" and the leave approved. In fact, the timing of the letter in response suggests that the leave had not been approved.

{¶ 32} The trial court concluded that Dr. Brodell was acting under the continued authorization of Garland when he responded to Seven Seventeen's follow-up inquiry about revised job duties. We agree.

{¶ 33} In support of her position, Garland cites *Hageman v. Southwest Gen. Health Ctr.*, 8th Dist. No. 87826, 2006-Ohio-6765, 2006 WL 3743095. In *Hageman*, the appellant was involved in a domestic-relations action with his ex-wife. Id. at ¶ 7. While that action was pending, an altercation occurred between the appellant and his ex-wife, which resulted in criminal charges being filed against the appellant. Id. at ¶ 8. During this time, the appellant was seeing a psychiatrist. Id. at ¶ 10. The appellant consented to his medical records being disclosed to the domestic-relations court as part of his effort to obtain custody of his minor child. Id. at ¶ 27. However, his ex-wife's attorney turned those records over to the prosecutor in the criminal matter. Id. at ¶ 30. In reversing in part an order of summary judgment, the Eighth Appellate District held that appellant's waiver of his privilege of confidentiality of his medical records in relation to the domestic-relations matter did not transform into a waiver for the purposes of his criminal matter. Id.

{¶ 34} Garland argues that the *Hageman* holding applies to the case sub judice. We disagree. In *Hageman*, the Eighth District held that an authorization of release of one's medical records is limited to the single entity to which the patient authorized disclosure. Id. In the case at bar, Garland authorized Dr. Brodell to disclose portions of her medical record to Seven Seventeen for the purposes of obtaining leave pursuant to the FMLA. Dr. Brodell's follow-up comments were not directed to an unauthorized third party; instead, they were

directed to Seven Seventeen, whom Garland had specifically authorized to receive her medical information.

{¶ 35} Next, Garland argues that Seven Seventeen needed additional authorization if it sought a "second opinion" regarding her medical condition.

{¶ 36} Garland cites *Harcourt v. Cincinnati Bell Tel. Co.* (S.D.Ohio 2005), 383 F.Supp.2d 944, in support of her argument. In *Harcourt*, the court analyzed the implications of Section 2613, Title 29, U.S.Code, which sets forth certification requirements under the FMLA. Id. at 955. This section provides a mechanism for an employer to request a second medical opinion if it doubts the "validity" of the physician's certification. Id. at 955. The patient's consent is necessary prior to obtaining a second opinion. Id. Garland argues that Seven Seventeen was effectively questioning the validity of Dr. Brodell's FMLA certification in this case and, as such, it was required to obtain her consent for a second opinion. We disagree. Seven Seventeen was not questioning the underlying diagnosis of Dr. Brodell; it merely questioned whether Garland was capable of performing alternative work with her injury.

{¶ 37} In reaching a similar conclusion, the trial court characterized Dr. Brodell's response to Seven Seventeen's letter as "merely a clarification" of his prior diagnosis. On appeal, Garland focuses on the trial court's use of the term "clarification." Garland notes that the *Harcourt* court also analyzed Section 825.307, Title 29, C.F.R., which provides that an employer " 'may contact the employee's health care provider, with the employee's permission, for purposes of clarification' " of an FMLA certification. *Harcourt v. Cincinnati Bell Tel. Co.*, 383 F.Supp.2d at 955, quoting Section 825.307, Title 29, C.F.R. It seems clear that the focus of that court's concern was when the employer was questioning the *authenticity* of a certification. Id. at 955. Upon review of the trial court's judgment entry, it does not appear that the trial court intended to use the term "clarification" as that term is technically referenced in the Code of Federal Regulations.

{¶ 38} Moreover, it is important to note that the clarification provision in the Code of Federal Regulations applies after the physician has submitted a *complete* certification under the FMLA. *Harcourt v. Cincinnati Bell Tel. Co.*, 383 F.Supp.2d at 955, quoting Section 825.307(a), Title 29, C.F.R. Dr. Brodell argues that the original FMLA form was not entirely completed when he initially returned it to Seven Seventeen. Specifically, there was no response given to the question asked at line 7b of the form, which was:

{¶ 39} "If able to perform some work, is the employee unable to perform any one or more of the essential functions of the employee's job (the employee or employer should supply you with information about the essential job functions)?

If yes, please list the essential functions the employee is unable to perform." (Emphasis omitted.)

{¶ 40} In its follow-up letter to Dr. Brodell, Seven Seventeen stated that it realized Garland would be unable to perform the duties of her regular job, as those duties required a significant amount of data entry. However, Seven Seventeen asked Dr. Brodell whether Garland would be able to perform the following alternative tasks: (1) stuffing envelopes, (2) alphabetizing documents, and (3) proofreading forms. Dr. Brodell generally responded to Seven Seventeen's inquiry with the comment: "No use of [right] arm/hand. If job meets that restriction then may return 5–9–05." Essentially, this subsequent communication from Dr. Brodell answered the original inquiry contained in section 7b of the FMLA form. Dr. Brodell was advising Seven Seventeen of the potential job functions that Garland would be unable to perform, i.e., those that required use of her right hand and/or arm.

{¶ 41} In this matter, Seven Seventeen was not challenging the validity of Dr. Brodell's diagnosis, nor was it seeking a formal clarification as anticipated by Section 825.307(a), Title 29, C.F.R. Instead, due to Dr. Brodell's initial failure to complete section 7b of the FMLA form, Seven Seventeen was simply seeking an explanation as to whether Garland was able to perform revised job assignments with her injury. Accordingly, Garland's arguments raised in reliance on *Harcourt v. Cincinnati Bell Tel. Co.*, 383 F.Supp.2d 944, are unpersuasive.

{¶ 42} Garland cites the depositions of Dr. Brodell and Palmer and argues that the privacy practices in Dr. Brodell's office were insufficient. We have determined that Dr. Brodell acted under the continuing authority of Garland when he responded to Seven Seventeen's subsequent inquiry and, therefore, he did not make an unauthorized disclosure of her medical information. Thus, the general privacy practices of Dr. Brodell's office are not relevant to this appeal.

{¶ 43} Dr. Brodell argues that his subsequent response to Seven Seventeen did not disclose any confidential medical information. Since we have concluded that Dr. Brodell acted under the continuing authority of Garland, we need not determine whether his response constituted confidential medical information.

{¶ 44} There was no genuine issue of material fact, and Dr. Brodell was entitled to judgment as a matter of law. Therefore, the trial court did not err in granting Dr. Brodell's motion for summary judgment.

{¶ 45} Garland's assignment of error is without merit.

{¶ 46} The judgment of the Trumbull County Court of Common Pleas is affirmed.

Judgment affirmed.

Rice, J., concurs.

O'Toole, J., dissents.

Colleen Mary O'Toole, Judge, dissenting.

{¶ 47} Finding that summary judgment was improvidently granted in this case, I would reverse and remand.

{¶ 48} The majority premises its decision on the fact that Dr. Brodell did not fill out item 7.b. on the certification for medical leave presented to him, leading the majority to conclude that the form was not "complete." I agree with the majority that pursuant to Section 825.307(a), Title 29, C.F.R., the nondisclosure provisions of the FMLA do not initiate until an employee submits to his or her employer a complete certification from a health-care provider. Thus, the question presented is whether the certification as filled out initially by Dr. Brodell was "complete." I think it was.

{¶ 49} Section 2613, Title 29, U.S.Code provides as follows:

{¶ 50} "(b) Sufficient certification. Certification provided under subsection (a) shall be sufficient if it states—

{¶ 51} "(1) the date on which the serious health condition commenced;

{¶ 52} "(2) the probable duration of the condition;

{¶ 53} "(3) the appropriate medical facts within the knowledge of the health care provider regarding the condition;

{¶ 54} "(4)(A) * * *

{¶ 55} "(B) for purposes of leave under [Section 2612(a)(1)(D), Title 29, U.S.Code], *a statement that the employee is unable to perform the functions of the position of the employee * * *.*" (Emphasis added.)

{¶ 56} These statutory requirements are substantially tracked by Section 825.306(a), Title 29, C.F.R., controlling the content of medical certifications.

{¶ 57} The information required for a "sufficient" certification pursuant to Section 2613(b)(1) through (3), Title 29, U.S.Code, is provided for at various points in the certification submitted to and filled out by Dr. Brodell. The information required by Section 2613(b)(4)(B) (i.e., that the employee's health condition prevents them from working) is to be answered by the health-care provider at item 7. That provides, in toto:

{¶ 58} "7. a. If medical leave is required for the employee's **absence from work** because of the **employee's own health condition** (including absences due to pregnancy or a chronic condition), is the employee **unable to perform work** of any kind?

{¶ 59} "b. If able to perform some work, is the employee **unable to perform any one or more of the essential functions of the employee's job** (the employee or the employer should supply you with information about the essential job functions)?  If yes, please list the essential functions the employee is unable to perform:

{¶ 60} "c. If neither a. nor b. applies, is it necessary for the employee to be **absent from work for treatment?**"  (Boldface sic.)

{¶ 61} In this case, Dr. Brodell filled out *both* items 7.a. and 7.c. with the phrase, "off work 4–25–05 to 6–27–05," leaving 7.b. blank.  That is, he indicated that Garland could not perform her functions as an employee, Section 2613(b)(4)(B), Title 29, U.S.Code, and that she required treatment for her condition.  This information made the certification complete and sufficient for purposes of the statute.  Admittedly, the answer given by Dr. Brodell to item 7. might very well be confusing to Garland's employer, Seven Seventeen Credit Union, since he filled out two sections in what are meant to be mutually exclusive answers.  Nevertheless, if Seven Seventeen wished for clarification of Dr. Brodell's opinion, it was required to get Garland's further authorization prior to contacting the doctor.  It did not.

{¶ 62} Consequently, I respectfully dissent.