George Suchomel, Plaintiff-Appellant, v. Suburban Life Newspapers, Inc., and Karl Bell, Defendants-Appellees.

Gen. No. 50,852.

First District, Second Division.

June 6, 1967.

Anthony F. Mannina and Angelo D. Mistretta, of Chicago, for appellant.

Kirkland, Ellis, Hodson, Chaffetz & Masters, of Chicago (Don H. Reuben and Lawrence Gunnels, of counsel), for appellees.

MR. JUSTICE BRYANT delivered the opinion of the court.

This is an appeal from a summary judgment against plaintiff granted on defendants' motion to dismiss plaintiff's libel action. Plaintiff, George Suchomel's theory on this appeal is that it was error for the trial court to allow the motion for summary judgment because the article complained of was not privileged and was libelous per se. In the alternative, the plaintiff urges that any privilege the publication may have had was lost because of the existence of malice on the part of the defendants.

The alleged libelous publication is a newspaper headline, subheadline and article which appeared on December 14, 1963, in defendants' newspaper. The headline stated, "City Policeman Accused of Burglary"; the subheadline read, "Countryside Sergeant Denies Charges

Brought Before City Council." The remainder of the article is as follows:

"By Karl Bell

"For the second time in three months Countryside's police force was placed into the limelight Wednesday when, after a city council meeting, a resident read a statement reportedly received from an area woman who contended, among other things, that Sgt. George Suchomel had twice within the past year, and while on duty made break-ins in the trailer court which is in the city.

"According to the statement read by Robert J. Brinkman, 5339 Kensington, the woman, a divorcee and mother of two, also charges that the two often spent 'from one to seven hours' together when the sergeant was supposed to be on night shift and they spent time drinking liquor in the squad car.

"Sgt. Suchomel denied all the charges.

"Brinkman refused to identify the writer, although requested by Mayor Melvin F. Eggert. Brinkman stated that her identity has been known to the mayor and to Police Chief John Girard for weeks.

"IN THE STATEMENT read by Brinkman, the letter writer claims that the sergeant, in uniform and using the squad car, would pick her up and then they would drive to a tavern where he would buy liquor which they would share as they sat in the police car.

"The woman contends, according to Brinkman, that Sgt. Suchomel would ignore radio calls and often would lie about the location of the squad car.

"Also stated was that several times the sergeant fired his weapon into the air 'for no apparent reason' and that he had twice broken into residences in the trailer court in Countryside.

241

"The letter writer also was quoted as stating that she had informed the sheriff's police about the sergeant's activities and that she later denied them under pressure to do so by the sergeant.

"Sgt. Suchomel has denied the allegations.

"He told The Suburban Life yesterday 'I was not at the meeting so I can't say I heard the actual statement read by Mr. Brinkman, but I've heard what was read and, except for the fact that I know the woman who I think Mr. Brinkman is referring to, there's not a charge in her statement that is true.

" 'I've told the mayor I have not done any of these things. So far I haven't been given a chance to formally answer any of the charges, for no formal complaint has been made.'

"Brinkman stated that the mayor had known about the contentions, as brought out by the woman, before the mayor read to the council on September 25, a report from the sheriff's office in which the sheriff stated his investigations of earlier charges against the chief and the sergeant had no basis for criminal action.

"Brinkman also contended that charges as brought out now by the woman have been confirmed by an investigation of the sheriff's police and that the mayor has received an affidavit from the sheriff's office signed by the woman.

"He stated the mayor has been 'holding out' by not disclosing the material to the city council.

"Wednesday night the mayor said he would release the contents of the affidavit to the council members.

"Mayor Eggert told The Suburban Life yesterday that on Thursday he contacted the woman in question and that she implied she would be willing to sign a formal complaint that night.

242

" 'The formal complaint was all written up, but when she appeared at the city hall Thursday night she refused to sign. She gave no reason.

" 'The question now is, inasmuch as no formal charges have been filed, which group can take any legal action, the council or the civil service board through the police commission?'

"He said he hoped to secure a legal opinion on the matter by today.

" 'I think we have to clear the air and see that the man has every right to be heard as to whether he's guilty or innocent. Surely, she also has every right to prove her side.'

"Brinkman, along with former officers Richard Kocek and Richard Martin are defendants in a libel suit brought against them by Police Chief John Girard.

"He seeks approximately $200,000 damages from each.

"Wednesday night the city council accepted the resignation of Officer Richard Martin."

At the time of the alleged libel, the plaintiff was employed as Sergeant of the Police Department of the City of Countryside, and was also Juvenile Officer for the municipality. In September 1963, Suchomel became the subject of serious public charges concerning his official conduct and fitness for office. Two of his fellow officers charged in sworn statements that the plaintiff had been intoxicated on duty, had blocked criminal investigations and had consorted with known members of "the syndicate." A woman, said to be the mistress of plaintiff, made accusations against the plaintiff, including charges that Suchomel had had intercourse with her while on duty, and that the two of them consumed alcoholic beverages while he was on duty, and that he ignored orders given to him over the radio while he was on duty. These

243

charges became the subject of the already mentioned public hearing after which they were related in the alleged libel by the Suburban Life Newspapers, Inc.

Suchomel does not in any way attack or dispute the vast bulk of the article; his claim of libel is based instead upon the headline, subheadline and lead of the story,

> "For the second time in three months Countryside's police force was placed into the limelight Wednesday when, after a city council meeting, a resident read a statement reportedly received from an area woman who contended, among other things, that Sgt. George Suchomel had twice within the past year, and while on duty made break-ins in the trailer court which is in the city."

■ We are of the opinion that the issues raised on this appeal are controlled by New York Times Co. v. Sullivan, 376 US 254. In that case the Police Commissioner of Montgomery, Alabama, sued the New York Times for having printed an advertisement which falsely criticized his official conduct. In holding against the plaintiff, the court said, at p 280, that,

> "The constitutional guarantees require, we think a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not."

■ The court did not in New York Times Co. v. Sullivan, supra, set forth how far down the governmental hierarchy the privilege of comment on official conduct would go. However, in Rosenblatt v. Baer, 383 US 75, a case involving the alleged libel of the supervisor of a municipal ski resort, the court, at p 85, stated that,

244

"It is clear, therefore, that the 'public official' designation applies at the very least to those among the hierarchy of government employees who have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs."

■ Recently it was held that a patrolman in the employ of the Village of Skokie did not fall within the boundaries of the statement of the court in the Rosenblatt case. Coursey v. Greater Niles Tp. Pub. Co., 82 Ill App2d 76, 227 NE2d 164.

The record establishes that the plaintiff in the instant case was a man with "substantial responsibility for or control over the conduct of governmental affairs." Plaintiff was not only sergeant of the Countryside police, but was second in command to the chief and in actual command when his superior was off duty. Plaintiff also served as the juvenile officer for the suburb.

■ Plaintiff also contends that even if there was a privilege, as we have so found, that that privilege was lost. The burden of proof in establishing actual malice is always upon the plaintiff. New York Times Co. v. Sullivan, supra, at p 284. Moreover, the Illinois Supreme Court in a subsequent case has declared that in every libel suit in Illinois where actual malice must be shown, the burden of proof, "is always upon the plaintiff." Lulay v. Peoria Journal-Star, Inc., 34 Ill2d 112, at 115, 214 NE2d 746.

■ The court in Lulay v. Peoria Journal-Star, Inc. supra, at pp 115–116 stated further that,

"The privilege to report governmental acts or utterances can only be defeated by proving that a particular publication was motivated solely by actual malice. (Judge v. Rockford Memorial Hospital, 17 Ill App2d 365; Beyl v. Capper Publications, Inc. 180 Kans 525, 305 P2d 817.) As expressed in the Re-

245

statement of Torts, section 611, a publication reporting government proceedings is nonactionable unless published 'solely for the purpose of causing harm to the person defamed.' . . . Although the plaintiff contends that the defendant here was guilty of actual malice, plaintiff did not offer any evidence remotely creating an issue of fact as to whether defendant's news article was conceived or inspired solely because of a malicious design to injure the plaintiff or his business. The plaintiff had the obligation both upon the motion for summary judgment and at the trial to adduce all of the evidence he believed would satisfy his burden. Harrell v. Summers, 32 Ill App2d 358; Porter v. Miller, 24 Ill App 2d 424; Killian v. Welfare Engineering Co., 328 Ill App 375."

█ It is manifest both from the record and from a reading of the defendants' news article that actual malice in this case is patently lacking as a matter of law—that the plaintiff neither did nor could sustain the burden of proof required to establish actual malice. The article on its face is a typical example of a matter-of-fact news coverage of the official inquiry and public controversy that occurred as a result of the serious charges of official misconduct committed by the plaintiff. The article, in fact, went to great lengths to set forth both sides of the controversy; it specifically reports and quotes plaintiff's denials of the charges.

█ Plaintiff not only failed to offer any proof of actual malice, but he also failed to plead or prove special damages. Since we have found that the defendants' article is privileged under the holding of New York Times Co. v. Sullivan, supra, and is accordingly not libelous, per se, plaintiff was required to plead and prove special damages. Lundstrom v. Winnebago Newspapers, Inc., 58 Ill App2d 33, 206 NE2d 525.

Section 57, Civil Practice Act provides that summary judgment is proper whenever there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Upon a motion for summary judgment in a libel suit where the plaintiff, as here, had the burden of proving actual malice, it has been held that the plaintiff must "adduce all of the evidence he believed would satisfy his burden." Lulay v. Peoria Journal-Star, Inc., supra, at 116. The court was right in deciding as a matter of law that plaintiff does not have a right of action.

Therefore the judgment of the trial court is affirmed.

Judgment affirmed.

LYONS, P. J. and BURKE, J., concur.