DUPLER, APPELLANT, *v.*
MANSFIELD JOURNAL CO., INC., APPELLEE.

(No. 80-196—Decided December 17, 1980.)

*Mr. Joseph I. Tripodi* and *Mr. James R. Barnhouse,* for appellant.

*Messrs. Smith, Renner, Hanhart, Miller & Kyler, Mr. Richard M. Hanhart* and *Mr. William A. Kyler,* for appellee.

## I.

SWEENEY, J.   It is uncontroverted that appellant, as a Dover city councilman and mayoral candidate, was a public official, so that the defamatory nature of the editorial criticism leveled against him is to be judged by the actual malice standard of *New York Times Co.* v. *Sullivan* (1964), 376 U. S. 254.[2]

---

[2] The primary thrust of appellant's complaint was that appellee defamed him by alleging in its editorial that Dupler twice violated Ohio law. As noted in *Monitor Patriot Co.* v. *Roy* (1971), 401 U. S. 265, 277, "a charge of criminal conduct, no matter

This standard "prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *Id.,* at pages 279-280.

This concept of actual malice has been further refined by subsequent decisions of the United States Supreme Court. Actual malice may not be inferred from evidence of personal spite, ill-will or intention to injure on the part of the writer. *Beckley Newspapers Corp.* v. *Hanks* (1967), 389 U. S. 81, 82; *Rosenblatt* v. *Baer* (1966), 383 U. S. 75, 84. Rather, the focus of inquiry is on defendant's attitude toward the truth or falsity of the publication, *Herbert* v. *Lando* (1979), 441 U. S. 153, 160; and a public official may recover only upon clear and convincing proof of actual malice. *Gertz* v. *Robert Welch, Inc.* (1974), 418 U. S. 323, 342; *New York Times, supra,* at pages 285-286. There must be a showing that false statements were made with a "high degree of awareness of their probable falsity***." *Garrison* v. *Louisiana* (1964), 379 U. S. 64, 74.

Since reckless disregard is not measured by lack of reasonable belief or of ordinary care, even evidence of negligence in failing to investigate the facts is insufficient to establish actual malice. Rather, since "erroneous statement is inevitable in free debate, and***must be protected if the freedoms of expression are to have the 'breathing space' that they 'need . . . to survive,'***" (*New York Times, supra,* at pages 271-72), "[t]here must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *St. Amant* v. *Thompson* (1968), 390 U. S. 727, 731.

## II.

It is against this pervasive backdrop of First Amendment protection for published criticisms of public officials that we review the trial court's ruling on appellee's motion for summary judgment. In so doing, this court must, as did the court

how remote in time or place, can never be irrelevant to an official's or a candidate's fitness for office for purposes of application of the 'knowing falsehood or reckless disregard' rule of *New York Times* v. *Sullivan*."

in *New York Times, supra,* at page 285, " 'make an independent examination of the whole record,'***so as to assure ourselves that the judgment does not constitute a forbidden intrusion on the field of free expression."

"Summary judgment shall be rendered***if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Civ. R. 56(C). The moving party carries the burden of proving that no genuine issue of fact exists, and all reasonable inferences shall be resolved in favor of the opposing party. Summary judgment is admittedly "a drastic device since its prophylactic function, when exercised, cuts off a party's right to present his case to the jury." *Heyman* v. *Commerce and Industry Ins. Co.* (C.A. 2, 1975), 524 F. 2d 1317, 1320. However, courts have not hesitated to grant such a motion where "it is plain that the record has been fully developed by depositions and affidavits***and such record demonstrates that, construing all the facts and inferences to be drawn therefrom in favor of the party against whom the judgment is entered, he would not be entitled to have a jury verdict stand***." *Time, Inc.* v. *McLaney* (C.A. 5, 1969), 406 F. 2d 565, 572.[3]

Summary procedures are especially appropriate in the First Amendment area. "The threat of being put to the defense of a lawsuit brought by a popular public official may be as chilling to the exercise of First Amendment freedoms as fear of the outcome of the lawsuit itself***. Unless persons, including newspapers, desiring to exercise their First Amendment rights are assured freedom from the harassment of lawsuits, they will tend to become self-censors. And to this extent debate on public issues and the conduct of public officials will become less uninhibited, less robust, and less wide-open, for self-censorship affecting the whole public is 'hardly less

---

[3] The Ohio summary judgment rule is patterned after Fed. R. Civ. P. 56; and it is clear that, especially in the area of First Amendment rights, Ohio courts will follow the same approach as taken by federal courts in deciding summary judgment motions.

virulent for being privately administered.' " *Washington Post Co.* v. *Keogh* (C.A.D.C. 1966), 365 F. 2d 965,968.

While summary judgment has been liberally utilized, at both federal and state levels, to dispose of libel actions having First Amendment implications,[4] it must be remembered that "[p]rinciples applicable to summary judgment motions generally, are applicable to such motions when made in a defamation action." *Hotchner* v. *Castillo-Puche* (S.D.N.Y. 1975), 404 F. Supp. 1041, 1050. Thus, a trial court may not weigh the proof or choose among reasonable inferences. In ruling on such a motion, the court is limited to examining the evidence "taking all permissible inferences and resolving questions of credibility in plaintiff's favor to determine whether *a reasonable jury acting reasonably could find actual malice with convincing clarity." Nader* v. *deToledano* (D.C. App. 1979), 408 A. 2d 31, 50. (Emphasis *sic.*)

### III.

Applying the foregoing principle to the evidence before the trial court on appellee's motion for summary judgment, we find that the lower court erred in not granting the motion. The evidence presented primarily concerned the allegedly defamatory nature of the following paragraph of the April 9, 1975, editorial:

"It seems to us that Dupler, if he is qualified as a licensed private investigator, ignored Ohio law twice—by not giving authorities the proper notification and then by making a seizure without a search warrant."

---

[4] In the following instances, summary judgment was granted where plaintiff had failed to produce evidence from which a jury could find that actual malice had been established with convincing clarity: *Yiamouyiannis* v. *Consumers Union of the United States, Inc.* (C.A. 2, 1980), 619 F. 2d 932; *Meeropol* v. *Nizer* (C.A. 2, 1977), 560 F. 2d 1061, 1064-1066; *Fadell* v. *Minneapolis Star & Tribune Co., Inc.* (C.A. 7, 1977), 557 F. 2d 107, 108; *Hoffman* v. *Washington Post Co.* (D.C. D.C. 1977), 433 F. Supp. 600, affirmed (1978), 578 F. 2d 442; *Walker* v. *Cahalan* (C.A. 6, 1976), 542 F. 2d 681, 684; *Perry* v. *Columbia Broadcasting System, Inc.* (C.A. 7, 1974), 499 F. 2d 797, 801-802; *Cerrito* v. *Time, Inc.* (C.A. 9, 1971), 499 F. 2d 306; *Bon Air Hotel, Inc.,* v. *Time, Inc.* (C.A. 5, 1970), 426 F. 2d 858; *Tagawa* v. *Maui Publishing Co.* (Hawaii 1968), 448 P. 2d 337; *Tait* v. *King Broadcasting Co.* (1969), 1 Wash. App. 250, 460 P. 2d 307; *Time, Inc.,* v. *McLaney* (C.A. 5, 1969), 406 F. 2d 565, 572; *Suchomel* v. *Suburban Life Newspapers, Inc.* (1967), 84 Ill. App. 2d 239, 228 N.E. 2d 172; *Washington Post Co.* v. *Keogh* (C.A.D.C., 1966), 365 F. 2d 965.

Yockey testified at deposition that the instant editorial was based entirely on the two prior news articles written by appellee's staff reporters and appearing in the April 4 and April 8, 1975, editions of The Times-Reporter. The April 4th report attributes to New Philadelphia police the assertion that Dupler violated a Revised Code section which requires that a private investigator give police "12 hours advance notice" of his involvement in a case. The April 8th story repeated this interpretation of the notification statute but quoted the local prosecutor to the effect that, if Dupler did violate this law, he would not be prosecuted because of "a lack of criminal intent." The statute in issue, R. C. 4749.05(B), actually provides that private investigators shall not operate in any county or municipality unless they notify the sheriff and police chief "within twelve hours of their arrival." It appears that appellant did notify police and attempted to enlist their aid within one hour before he proceeded to the residence where he believed the stolen property was located.

The April 4th article also stated that New Philadelphia police refused to assist Dupler because "they had to obtain a search warrant before they could enter the apartment to conduct a search." In this same vein, it was reported on April 8th that, in recovering the stolen stereo without a search warrant, " 'Dupler in no way obstructed the administration of justice,' " according to the assistant prosecutor. While Dupler alleges that he was given consent to search, it is unclear as to whether such consent was given by an actual resident of the apartment.

Appellant has not contended that the contents of the April 4th and April 8th articles are libelous, and none of the principals quoted therein have ever repudiated the statements attributed to them or complained about the accuracy of the reporting. Appellant's position is that Yockey's interpretation of the facts, as reported in the prior articles, is so contrary to "the law itself" as to indicate knowledge of falsity or reckless disregard of the truth by Yockey. Of course, the *New York Times* case refuted the idea that actual malice could be implied from the character and content of a publication. See, also, *Washington Post* v. *Keogh, supra,* at page 969. It is not sufficient for a libel plaintiff to show that an interpretation of facts

is false; rather, he must prove with convincing clarity that defendant was aware of the high probability of falsity.

Appellant's contention that Yockey must have known he was falsely interpreting the notification statute is unconvincing. The clause of R. C. 4749.05(B) in question may be subject to differing interpretations. It is significant that appellant was not able to refute Yockey's deposition testimony that he relied completely on the prior news articles in writing his editorial. Yockey had no reason to doubt the accuracy of the statutory interpretations attributed to police in the initial article, nor the accuracy of the article itself. While a perusal of the Revised Code *may* have convinced Yockey that he was misinterpreting the statute, "[a]n investigatory failure alone * * *, without a high degree of awareness of probable falsity, may raise the issue of negligence but not the issue of 'actual malice.'" *Tagawa* v. *Maui Publishing Co.* (Hawaii 1968), 448 P. 2d 337, 340.[5]

Additionally, appellant's contention that Yockey was aware of the falsity of his editorial inference of an illegal seizure by Dupler is also without merit. As a basis for his assertion that Yockey knew he was falsely accusing Dupler of making an illegal warrantless search, appellant points to a quote in the April 8th article by the assistant prosecutor that " 'Dupler in no way obstructed the administration of justice.'" An inference of actual malice cannot be drawn from this fact. The news articles stated that Dupler had made a warrantless search; however, the possibility of consent was missing from these stories. Yockey simply drew one of several permissible legal conclusions from these sketchy facts, *i.e.*, that the warrantless search was illegal. As observed in *Nader* v. *deToledano, supra,* at page 51, "[a]doption of a rational explication of an ambiguous document, even if erroneous, does not constitute clear and convincing evidence sufficient to support a judgment of publication with actual malice." It is readily apparent that the aim of the editorial was to criticize the prosecutor's office for its hand-

---

[5] A different situation exists where the source of facts is inherently unreliable, such as an unverified anonymous phone call. Cf. *St. Amant* v. *Thompson* (1968), 390 U.S. 727, 732. In such a circumstance, the writer could be deemed aware of the high probability of falsity.

ling of this affair. Seen in this light, it can hardly be presumed that Yockey should accept the truth of an opposite legal conclusion espoused by the very same office he was criticizing.

Finally, appellant alleges that the editorial comment "if he is qualified as a licensed private investigator," was made with knowing falsity, because Yockey knew from the prior articles that Dupler was "acting as a private investigator." It is quite evident that this phrase is simply a rhetorical question, and as such, it can neither be true nor false. It merely raises the issue of whether, as a private investigator, Dupler violated the law.

Yockey's admissions at deposition that he now believes that three editorial comments directed toward Dupler are false is irrelevant. As stated in *Glover* v. *Herald Co.* (Mo. 1977), 549 S.W. 2d 858, 861, "actual malice is to be measured *at the time of publication* * * *." (Emphasis added.) *Accord, New York Times, supra,* at page 286. The fact that Yockey changed his opinion over one year after the editorial, when presented with additional facts, is not evidence of his state of mind when he wrote the editorial. *Cf. Herbert* v. *Lando, supra* (441 U. S. 153).

Having re-examined all the evidence before the trial court on the motion for summary judgment, and taking all reasonable inferences in the light most favorable to appellant, we find that a jury acting reasonably could not find actual malice with convincing clarity. Therefore, summary judgment should have been granted for appellee.[6]

## IV.

While the foregoing conclusion resolves this cause, this court also finds it necessary to review the Court of Appeals' finding that R. C. 2739.13 and 2739.14 are unconstitutional, as infringing upon freedom of expression. The trial court admitted evidence that, in August 1975, appellant submitted a retraction to the April 9th editorial to The Times-Reporter.

---

[6] In light of this conclusion, it is unnecessary for this court to review the Court of Appeals' determination that defendant's motions for directed verdict should also have been granted. However, we do note that there was no additional evidence adduced at trial from which a reasonable jury could find actual malice, at the time of publication, with convincing clarity.

Appellee published this statement, but not in the form or place specified by R. C. 2739.14.[7] Defense counsel objected to the admission of testimony concerning non-compliance with the retraction statutes, but the court allowed it as bearing on the mental state and attitude of Yockey. This was prejudicial error. As was held in *New York Times, supra,* at page 286, "failure to retract upon***demand***is***not adequate evidence of malice for constitutional purposes." It has not been demonstrated that Yockey's conduct, four months after the editorial, has any bearing on his state of mind at the time of publication.

However, the fact that evidence of non-compliance with the retraction statutes was erroneously admitted does not raise the question of the constitutionality of these provisions. Unlike the situation in *Miami Herald Publishing Co.* v. *Tornillo* (1974), 418 U. S. 241, appellant herein did not bring suit under these statutes, nor was there an attempt to criminally prosecute appellee for violation of these sections. The effect of R. C. 2739.13 and 2739.14 was totally irrelevant to the determination of this cause. The Court of Appeals had no occasion to pass on their constitutionality, and erred in so doing.

For the foregoing reasons, the judgment of the Court of Appeals is affirmed in part and reversed in part.

*Judgment accordingly.*

CELEBREZZE, C. J., P. BROWN, LOCHER, HOLMES and STILLMAN, JJ., concur.

STILLMAN, J., of the Eighth Appellate District, sitting for DOWD, J.

WILLIAM B. BROWN, J., concurring in the judgment. The majority opinion sustains the Court of Appeals' ruling that the trial court erred in denying defendant's motion for summary judgment, and in doing so, finds it unnecessary to review the Court of Appeals' alternative ruling that the trial court erred

---

[7] Specifically, appellee added "Editorial is rebutted" to the top of the statement and placed Dupler's name and address at the end, so that it appeared to be a letter to the editor, rather than an editorial retraction. Additionally, it was published in a less prominent place than was the original editorial.

in denying defendant's motions for directed verdict. See fn. 6, *supra.*

If the majority opinion is correct in asserting that the same evidence on the issue of malice was before the trial court at summary judgment as was before it after trial when it denied defendant's motions for directed verdict, see fn. 6, *supra,* our affirmance would be on firmer grounds if we ruled that the trial court erred in denying defendant's motions for directed verdict, and thus found it unnecessary to review the trial court's disposition upon motion for summary judgment.

We would be on firmer grounds because under the Civil Rules more evidence is needed to withstand a motion for directed verdict than is needed to withstand a motion for summary judgment.[8] Moreover, we would not thereby render trial on the merits nugatory by disposing of this cause on the basis of a pre-trial ruling.

Thus, I concur in the judgment because the trial record indicates that a directed verdict under Civ. R. 50(A)(4) was warranted. I find no need to review whether the trial court's denial of defendant's motion for summary judgment was correct, or whether the same material evidence was before the trial court when it denied defendant's motion for summary judgment as was before it after trial when it denied defendant's motions for directed verdict.

I am not necessarily indisposed toward a liberal approach to the granting of summary judgment,[9] nor am I necessarily indisposed toward the utilization of summary judgment for prophylactic purposes, especially where First Amendment rights are implicated.[10] However, I simply do not think it

---

[8] The same quantum of evidence can require that a motion for summary judgment be *denied* under Civ. R. 56(C) because there exists "a genuine issue as to***[a] material fact," and that a motion for directed verdict under Civ. R. 50(A)(4) be *granted* because "reasonable minds could come to but one conclusion upon the evidence."

[9] Some judges and commentators would grant summary judgment whenever a verdict would be directed on the record the parties have actually presented; while others would deny summary judgment whenever the record presented indicates the likelihood that new or different evidence might turn up at trial. See, *e.g., Arnstein* v. *Porter* (C.A. 2, 1946), 154 F. 2d 464; Wright, Federal Courts (3 Ed.) 495-496, Section 99.

[10] Instead of permitting a defamation plaintiff to withstand a defendant's motion for summary judgment if a genuine issue as to a material fact (*i.e.,* malice) exists as is

necessary or prudent, especially by way of syllabus, for us to reach these larger issues here, particularly since this cause was not argued as such.[11]

---

usually the case under Civ. R. 56(C), some courts, as does the majority herein, require such a plaintiff to pass muster under a variant of the more restrictive directed verdict standard. See Civ. R. 50(A)(4), at fn. 8, *supra;* syllabus, *supra.* Apparently, courts employ these more restrictive standards to reduce the frequency with which spurious defamation actions are maintained.

[11] Even if the trial court did err in denying defendant's motion for summary judgment (because plaintiff's proof at summary judgment failed), the majority should have first considered whether this error was rendered harmless by the evidence adduced at trial. There is no doubt that the trial court's denial of defendant's motion for summary judgment was reviewable upon defendant's appeal from the ensuing adverse final judgment. *Balson* v. *Dodds* (1980), 62 Ohio St. 2d 287, paragraph one of the syllabus. *Balson* v. *Dodds,* however, leaves open the issue of the application of the harmless error doctrine to denials of summary judgment motions. See, generally, Civ. R. 61; 7 Moore's Federal Practice, Chapter 61; 5A Corpus Juris Secundum 115, Appeal and Error, Section 1757.

The trial court's denial of plaintiff's motion for summary judgment in *Balson* v. *Dodds, supra,* could not have been harmless because this denial was predicated upon a construction of Civ. R. 36 which permitted defendant to avoid the legal conclusiveness of his failure to file timely answers to plaintiff's Requests for Admissions. Thus, the above legal conclusiveness of these Civ. R. 36 admissions (which would have obtained if summary judgment had instead been granted) would have required an appellate court to ignore the evidence adduced at trial even if this evidence totally conflicted with these Civ. R. 36 admissions.