[Cite as *Aurora Partners III., Ltd. v. Aurora*, 2013-Ohio-4310.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| AURORA PARTNERS III, LTD., | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2013-P-0019** |
| CITY OF AURORA, OHIO, | : | |
| Defendant-Appellee. | : | |

Civil Appeal from the Portage County Court of Common Pleas, Case No. 2011 CV 00340.

Judgment: Affirmed.

*Douglas P. Whipple,* 13940 Cedar Road, Suite 420, University Heights, OH 44118-3204 (For Plaintiff-Appellant).

*Frank H. Scialdone, James A. Climer,* and *John D. Pinzone,* Mazanec, Raskin, Ryder & Keller Co., L.P.A., 100 Franklin's Row, 34305 Solon Road, Solon, OH 44139 (For Defendant-Appellee).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, Aurora Partners III, Ltd., appeals from the summary judgment entered by the Portage County Court of Common Pleas, declaring appellee, City of Aurora, to hold a permanent easement, for ingress and egress, over portions of appellant's property. At issue is whether there are genuine issues of material fact regarding the existence and/or location of an easement for ingress and egress,

possessed by appellee, over appellant's land.  We answer this question in the negative and affirm the judgment of the trial court.

{¶2}  In April of 1995, appellant purchased a seven-acre parcel of vacant property for commercial development.  The parcel is bordered to the south by appellee's service center and the Aurora Cemetery; and to the north by various commercial properties.  Access to the parcel is from the property's frontage to Aurora Road (a.k.a. State Route 43), to the east.  A paved roadway runs across portions of the property east to west from Aurora Road; the roadway ends at appellee's service center gate.

{¶3}  According to Harry W. Caplan, one of appellant's principals, the access road was seldom used by appellee when appellant purchased the parcel.  Mr. Caplan averred that "many years" after appellee purchased the parcel, appellee paved the road and began using the same more frequently with heavy trucks and equipment.[1]  Mr. Caplan asserted appellant was unaware of appellee's intentions to pave the road and, even though it was partially situated on appellant's property, it did not consent. Mr. Caplan maintained that the nature and significance of the heavy vehicular traffic has changed the character of appellant's property and rendered it unsuitable and unusable.

{¶4}  Appellee maintained it has an existing easement for ingress and egress over the property at issue and multiple recorded documents established the same.  In particular, in 1933, a recorded deed provided appellee's then-governing body, the Portage County Commissioners, a "right-of-way to be used as roadway for means of ingress and egress to and from" the property.  In 1961, appellee obtained the property

---

1. A factual conflict exists regarding whether, before 2003 or 2004, the roadway was actually paved or simply gravel.  Mr. Caplan averred the roadway was gravel; during a deposition, however, John Trew, Director of Public Services for appellee, testified that the roadway was simply repaved in either 2003 or 2004.  This conflict does not affect our analysis of the issues in this case.

which included "rights of way to be used as roadway for means of ingress and egress to and from the * * * property."

{¶5} Appellee then sold the property to Irene Brandes, in which it reserved "an easement and access for the purpose of repair, replacement, maintenance or removal of the water mains." Brandes Properties later sent a letter to appellee in which it, after deliberation, conveyed, inter alia, "a right of way" to a road "that will extend from Route #43 to and beyond the present [Aurora] pumphouse." The agreement, however, was never fully executed or recorded. As a result, in 1973, appellee and the then-owner of the property, Aurora Village Commons, entered into a written agreement which purported to clarify the 1961 agreement.

{¶6} The 1973 agreement granted appellee a "permanent easement" to a permanent driveway running from the intersection of Aurora Road and Maple Lane across the property. The agreement, however, did not set forth the specific metes and bounds of the permanent easement. Nevertheless, Richard J. Shaw, the general partner for Aurora Village Commons at the time the agreement was executed, averred the "roadway and driveway existing and described in the [easement agreement] were then and remain in their present location."[2] The agreement was recorded in 1979.

{¶7} Appellee ultimately constructed a service center on its property, situated south of appellant's property. In addition to the increase in heavy vehicle traffic, Mr. Caplan averred that appellee began using that property as a dump site for empty

2. In 1986, Aurora Village Commons granted McDonald's a "perpetual, non-exclusive easement for automobile and pedestrian ingress and egress * * *." Because appellant does not contest that easement and appellee was not a party to the agreement, it is not directly relevant to the issue before this court; namely, whether appellee possesses an easement for ingress and egress over appellant's land and, if so, where is it located.

chemical drums, wood and boards, building materials, disassembled motor vehicles, inoperable machine parts, pallets, scrap metal, used tires, and other assorted trash.

{¶8} Appellant filed a complaint seeking relief on counts to quiet title, ejectment, trespass, and physical taking. In filing the complaint, appellant sought (1) a declaration restoring quiet title to its property; (2) an injunction prohibiting appellee's presence on its property except for maintaining the existing waterline; (2) an injunction prohibiting appellee from dumping trash on its property within view of appellant's property; and (4) money damages. Appellee filed an answer and counterclaim seeking a declaratory judgment for a permanent easement; appellee also sought to quiet title on the easement to which it claimed entitlement.

{¶9} Appellee filed a motion for summary judgment which appellant duly opposed. Appellee later filed a reply to appellant's memorandum in opposition. On February 13, 2013, the trial court determined, pursuant to R.C. 2744.02, appellee was immune from liability on appellant's claims for trespassing, taking, and ejectment. The trial court further determined appellee "is also entitled to its use of the road over [Appellee's] property. The easements and agreements give [Appellee] that right." The court later entered a judgment nunc pro tunc due to a scrivener's error. As a result of the judgment, no justiciable issues remained and appellant filed a notice of appeal. Appellant assigns two errors for this court's review.

{¶10} Appellant's first assignment of error states:

{¶11} "The trial court erred and abused its discretion by granting appellee's counterclaim for declaration that it is entitled to a permanent easement."

4

**{¶12}** Summary judgment is a procedural tool that terminates litigation and thus should be entered with circumspection. *Davis v. Loopco Industries, Inc.*, 66 Ohio St.3d 64, 66 (1993). Summary judgment is proper where (1) there is no genuine issue of material fact remaining to be litigated; (2) the movant is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and, viewing the evidence in the non-moving party's favor, that conclusion favors the movant. *See e.g.* Civ.R. 56(C).

**{¶13}** When considering a motion for summary judgment, the trial court may not weigh the evidence or select among reasonable inferences. *Dupler v. Mansfield Journal Co.*, 64 Ohio St.2d 116, 121 (1980). Rather, all doubts and questions must be resolved in the non-moving party's favor. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 359 (1992). Hence, a trial court is required to overrule a motion for summary judgment where conflicting evidence exists and alternative reasonable inferences can be drawn. *Pierson v. Norfork Southern Corp.*, 11th Dist. Ashtabula No. 2002-A-0061, 2003-Ohio-6682, ¶36. On appeal, we review a trial court's entry of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996).

**{¶14}** Appellant contends the trial court erred in granting summary judgment because the record contains evidence that significant portions of the easement on which appellee relies are on property located north of its property and substantial portions of the paved road are outside the legal boundaries of the easement. In support, appellant relies on the testimony of its expert, Kenneth J. Hejduk, a professional surveyor.

5

**{¶15}** In his affidavit, Mr. Hejduk averred that, even assuming the deeds and agreements appellee utilizes to support its claim for an easement are valid, they still do not authorize the particular roadway currently used by appellee for ingress and egress. Mr. Hejduk surveyed the property and, after identifying the specific metes and bounds described in the recorded documents, determined that appellee possessed an easement for ingress and egress for only a 15' right of way. This right of way, at certain points, overlapped portions of the extant paved roadway. According to his measurements, however, the 15' right-of-way easement is completely north of appellant's property at the access point of Aurora Road. Mr. Hejduk consequently determined that any municipal vehicle traversing the paved road will necessarily travel onto appellant's property either partially or entirely outside the limits of the ingress/egress easement. Thus, Mr. Hejduk's testimony revealed that, while appellees possess an easement, it is situated in a location predominantly north of the current paved road.

**{¶16}** Mr. Hejduk's survey provides some evidence that appellee's use of the road is inconsistent with the metes and bounds set forth in the recorded documentation. Nevertheless, the 1973 agreement, executed between appellee and the predecessor owners, Aurora Village Commons, included language conveying a "permanent driveway" that runs from Aurora Road, at the intersection of Maple Lane and continues westerly to the Central Wellfield.[3] The agreement provided that the permanent driveway "would remain in its present location" and represent a "permanent easement."

---

3. Maple Lane runs perpendicular to Aurora Road and, from an aerial view of the location, the paved roadway at issue is an extension of Maple Lane.

The 1973 agreement, which was duly executed by both parties, was recorded with the Portage County Recorder.

{¶17} We recognize that the 1973 agreement conveys a permanent easement, but neither sets forth metes and bounds nor specifies a general location of the permanent driveway. The lack of specificity, however, does not necessarily defeat the conveyance. The failure to describe an easement by metes and bounds does not invalidate the conveying instrument. *H & S Company, Ltd. v. Aurora*, 11th Dist. Portage No. 2003-P-0104, 2004-Ohio-3507, ¶16, citing *Roebuck v. Columbia Gas Transm. Corp.*, 57 Ohio App.2d 217, 219-220 (3d Dist.1977). The dimension and scope of an easement may be ascertained from the language of the conveyance and the circumstances surrounding the grant. *H&S*, *supra;* citing *Roebuck*, *supra*, at 220; *see also Pomante v. Marathon Ashland Pipe Line LLC*, 187 Ohio App.3d 731, 2010-Ohio-1823, ¶10 (10th Dist.); *Amsbary v. Little*, 4th Dist. Washington No. 90 CA 16, 1991 Ohio App. LEXIS 1186*, *9 (Mar. 11, 1991). Therefore, "when an expressed easement imprecisely describes the location of an easement, the court must examine extrinsic evidence to determine the location as intended by the parties, which is typically indicated by use." *H&S*, *supra*; *accord Woodyard v. Chesterhill*, 5th Dist. Morgan No. 05-CA-18, 2006-Ohio-634, 2006 Ohio App. LEXIS 581, *9.

{¶18} A review of the record in this case demonstrates that, even though the easement did not specify metes and bounds, there was sufficient evidence identifying the location of the easement. First, the evidence indicates appellee regularly used the roadway in question both before and after appellant had purchased the parcel. And,

7

since the road was paved or repaved in 2003 or 2004, that use has significantly increased.

{¶19} Furthermore, Richard J. Shaw, the general partner of Aurora Village Commons who executed the 1973 agreement on its behalf, averred that, at the time the agreement was entered, it was his expectation and intention to grant a permanent easement to appellee for "the then existing roadway and driveway which extended westerly from the intersection of State Route 43 [Aurora Road] and Maple Lane, and along the eastern boundary of and within the property [at issue.]" Shaw further averred that, to the best of his knowledge and observation, the roadway existing and described in the agreement was, and still remains, in its present location. Aerial photographs and site plans dating as far back as 1988 were submitted during the summary judgment exercise. These exhibits demonstrate that the only roadway extending west from the intersection of Aurora Road and Maple Lane is the paved roadway that is the subject of this litigation.

{¶20} We additionally point out that the foregoing conclusion is not inconsistent with Mr. Hejduk's survey. Mr. Hejduk averred that the only specified easement on record is the 15' track running predominantly north of the property. This easement, defined in the 1961 deed, has specified metes and bounds and, as a result, is different than the more generally-defined, permanent easement conveyed in the 1973 agreement by Aurora Village Commons. Because the easement discussed in the 1973 agreement did not contain metes and bounds, Mr. Hejduk would have no ability to specifically measure its parameters or verify its existence by way of survey. In light of Mr. Shaw's affidavit, however, both easements can legally coexist. Therefore, Mr. Hejduk's survey

8

and verifications are not, unto themselves, sufficient to create a genuine issue of material fact on the issue of appellee's alleged trespass.

{¶21} Notwithstanding this conclusion, appellant contends there is conflicting evidence and material issues of fact that exist regarding whether Aurora Village Commons had a legal right to convey an easement by way of the 1973 agreement. Appellant points out that the unexecuted 1961 letter, which purported to initially convey an easement to appellee, was signed by one "F.A. Brandes" on behalf of "Brandes Properties." Appellant argues that the owner of the property in 1961 was Irene Brandes, not F.A. Brandes or Brandes Properties. Appellant claims the letter was legally void and thus no easement was conveyed in 1961. Appellant therefore contends there is a question as to whether the Brandes easement was ever legally created and, as a result, there is a question whether Aurora Village Commons could convey the so-called Brandes Properties' easement to appellee. We do not agree.

{¶22} There is nothing in the record suggesting Aurora Village Commons did not own the subject property at the time it entered and recorded the 1973 agreement. Thus, even assuming one could question the legal validity of the Brandes easement, it is clear that Aurora Village Commons had the right, as the successor owner of the property, to convey a permanent easement over the property at the time the agreement was executed and recorded. In essence, the legal validity of the Brandes easement is inconsequential to the extent the 1973 agreement evidences an intent to convey a permanent easement over the portion of the property in question. Appellant's argument therefore has no bearing on the validity or sufficiency of the easement.

9

**{¶23}** The 1973 agreement, which was recorded, created an easement over the subject property. And the evidence demonstrates the location of that easement is consistent with the current, existing, paved roadway at issue in this litigation. We therefore hold the trial court did not err in declaring that appellee possesses a permanent easement in the location of the paved roadway, which crosses appellant's property as a matter of law.

**{¶24}** Appellant's first assignment of error lacks merit.

**{¶25}** For its second assignment of error, appellant asserts:

**{¶26}** "The trial court erred and abused its discretion by granting appellee's motion for summary judgment on the issue of sovereign immunity."

**{¶27}** Determining whether a political subdivision is immune from tort liability under R.C. Chapter 2744 involves a three-tiered analysis. *Greene Cty. Agricultural Soc. v. Liming*, 89 Ohio St.3d 551, 556-557 (2000). The first tier sets forth the general rule that a political subdivision is immune from liability incurred in the performance of either a governmental function or proprietary function. *Id.* at 556-557; R.C. 2744.02(A)(1). That immunity, however, is not absolute. R.C. 2744.02(B); *Cater v. Cleveland*, 83 Ohio St.3d 24, 28 (1998).

**{¶28}** The second tier of the analysis requires a court to consider whether any of the five exceptions to immunity listed in R.C. 2744.02(B) apply to expose the political subdivision to liability. *Cater, supra*, at 28. If any of the exceptions to immunity in R.C. 2744.02(B) apply *and* no defense in that section protects the political subdivision from liability, then the third tier of the analysis requires a court to determine whether any of the defenses to immunity set forth under R.C. 2744.03 apply.

{¶29} Under the three-tier analysis, the end of the inquiry is reached when the acts or omissions of a political subdivision do not fit under any of the five exceptions enumerated in R.C. 2744.02(B). In other words, the courts do not engage in the third tier of the analysis regarding available defenses provided in R.C. 2744.03 if no exception under R.C. 2744.02(B) can be found to remove the general grant of immunity.

{¶30} In its judgment entry, the trial court determined that none of the exceptions to immunity apply to appellant's trespass, taking, and ejectment claims. Thus, it concluded appellee was immune from liability for these claims.

{¶31} We first point out that R.C. Chapter 2744. and its procedural mandates do not apply to civil claims based upon alleged violations of federal constitutional or statutory law. *See e.g. Cochran v. Norton*, 9th Dist. Summit No. 20418, 2001 Ohio App. LEXIS 3378, *17 (Aug. 1, 2001). In effect, therefore, appellee could not be immune from appellant's Fifth Amendment "taking" claim, to the extent it was available.

{¶32} That said, our conclusion that a valid easement exists over the subject property renders the issue of immunity moot. That is, because appellee is entitled, via the ingress/egress easement, to permanently use the paved roadway, appellant cannot claim appellee's use is either a trespass or a taking. Similarly, appellant cannot eject appellee for a use to which it is legally entitled. Because there is no claim that would require an immunity analysis, any such analysis would have no practical effect on the outcome of the case. Any question relating to appellee's immunity to appellant's claims is therefore moot.

{¶33} Appellant's second assignment of error is not well taken.

{¶34} For the reasons discussed in this opinion, the judgment of the Portage County Court of Common Pleas is affirmed.

TIMOTHY P. CANNON, P.J.,

THOMAS R. WRIGHT, J.,

concur.