[Cite as *Halliday v. Bd. of Dirs. of the Mental Health & Recovery Bd. of Erie & Ottawa Ctys.*, 2020-Ohio-702.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

| | |
|---|---|
| Dr. Kirk Halliday | Court of Appeals No. E-19-011 |
| Appellant | Trial Court No. 2017 CV 0561 |
| v. | |
| The Board of Directors of the Mental Health and Recovery Board of Erie and Ottawa Counties, et al. | **DECISION AND JUDGMENT** |
| Appellees | Decided: February 28, 2020 |

* * * * *

Peter D. Traska and Michelle L. Traska, for appellant.

Patrick Kasson and Francesca R. Boland, for appellee The
Mental Health and Recovery Board of Erie and Ottawa Counties.

James W. Kart, for appellee Firelands Regional Medical Center.

* * * * *

**SINGER, J.**

{¶ 1} Appellant, Dr. Kirk Halliday, appeals from the February 1, 2019 judgment

of the Erie County Court of Common Pleas, granting the motions for summary judgment

of appellees, the Board of Directors of the Mental Health and Recovery Board of Erie and Ottawa Counties ("Board"), fourteen individual Board members and Firelands Regional Medical Center ("Firelands"). For the reasons that follow, we affirm.

{¶ 2} Appellant sets forth one assignment of error:

The trial court failed to consider evidence of Appellees' reasons for advancing a false narrative concerning the Appellant's termination as Executive Director of the Appellee Mental Health and Recovery Board of Erie and Ottawa Counties.

**Background Facts**

{¶ 3} Appellant served as the executive director of the Board from 1993 until November 2016, when the Board suspended him. The Board held an administrative hearing on March 21, 2017, after which the Board terminated appellant's employment. Appellant appealed this decision to the Erie County Court of Common Pleas, case No. 2017 CV 0161. On January 5, 2018, the trial court affirmed the termination. Appellant appealed to this court and we affirmed the trial court's judgment. *See Halliday v. Mental Health & Recovery Bd. of Erie & Ottawa Ctys.*, 6th Dist. Erie No. E-18-005, 2018-Ohio-4053.

{¶ 4} On November 2, 2017, appellant filed his complaint for defamation/libel against appellees in Erie County Court of Common Pleas, case No. 2017 CV 0561. In his complaint, appellant alleged the following. On January 17, 2017, the Board held a meeting where defamatory statements were made and then published in the Board's

2.

minutes ("FY17 [fiscal year 2017] contract for Firelands Counseling and Recovery Services [("FCRS")] will need to be increased due to incorrect budget allocation previously given"). On February 21, 2017, the Board held a meeting where defamatory statements were made and then published in the Board's minutes (Authorization to increase FY17 9-month purchase of service contract with FCRS "due to board staff mathematical error when calculating agency budgets"). In the Fiscal Year 2017 9-Month Purchase of Service/Grant Contract Amendment-1 and Amendment-2, the Board and Firelands made defamatory statements ("Whereas the Board desires to increase the 9-Month Purchase of service/Grant Contract due to a mathematical error"). In the Fiscal Year 9-Month Purchase Wrap/Grant Contract, the Board and Firelands made a defamatory statement ("Whereas the Board desires to increase the 9-Month Wrap/Grant Contract due to mathematical error, by Board staff, resulting in an unapproved budget cut to the provider").

{¶ 5} Appellant further alleged the defamatory statements denote "budgeting was done incorrectly, and the mistake was attributed to [appellant] whom the * * * Board indicated was responsible for 'the mathematical error' allegedly causing the budget error." Appellant alleged the budgeting was accurate and the math error statement by the Board and Firelands "was patently false and defamatory, was directed at [appellant] because he oversaw the budgeting process by staff, and this statement caused him injuries."

3.

**{¶ 6}** On November 19, 2018, Firelands filed a motion for summary judgment asserting there is no evidence the alleged defamatory statements were "of or concerning" appellant, nor is there clear and convincing evidence that Firelands acted with actual malice. The Board and its members also filed a motion for summary judgment arguing, inter alia, there is no evidence the statements were false, the Board and its members are immune and the Board members did not act recklessly or with malice. On February 1, 2019, the trial court granted the motions for summary judgment. Appellant timely appealed.

## Summary Judgment Standard

**{¶ 7}** We review a summary judgment decision on a de novo basis. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Thus, we undertake an independent examination of the record and make our own decision as to whether the moving parties are entitled to summary judgment. *Dupler v. Mansfield Journal*, 64 Ohio St.2d 116, 119-120, 413 N.E.2d 1187 (1980).

**{¶ 8}** Summary judgment is appropriate when (1) no genuine issue as to any material fact exists, (2) the party moving for summary judgment is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion, and that is adverse to the nonmoving party. Civ.R. 56; *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978). "The moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the

4.

record before the trial court which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996). Once the moving party meets that burden, the nonmoving party has a reciprocal burden and "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E).

**Law**

{¶ 9} Defamation is a false statement published by a defendant acting with a degree of fault which injures a person's reputation, exposes the person to public hatred, contempt, ridicule, shame or disgrace, or adversely affects the person's profession. *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 73 Ohio St.3d 1, 7, 651 N.E.2d 1283 (1995).

{¶ 10} Statements made about public officials are constitutionally protected when the statements concern any matter which may touch on the official's fitness for office. *Soke v. Plain Dealer*, 69 Ohio St.3d 395, 397, 632 N.E.2d 1282 (1994). "In order to be actionable, a plaintiff in a defamation action must show that the alleged defamatory statement was 'of and concerning' the plaintiff." *Whiteside v. United Paramount Network*, 12th Dist. Madison No. CA2003-02-008, 2004-Ohio-800, ¶ 15, citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 267, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) ("[W]here the plaintiff is a public official his place in the governmental hierarchy is sufficient

5.

evidence to support a finding that his reputation has been affected by statements that reflect upon the agency of which he is in charge.") Under the *New York Times* standard, a public official seeking damages for a defamatory statement relating to official conduct must prove "the statement was made with 'actual malice'- that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *Id.* at 279-280.

{¶ 11} "Reckless disregard" is established if the plaintiff presents evidence which permits a finding that the defendant had serious doubts regarding the truth of the statements or the accuracy or veracity of the sources. *A & B-Abell Elevator Co.*, at 12-13. Proof of actual malice must be clear and convincing. *Perez v. Scripps-Howard Broadcasting Co.*, 35 Ohio St.3d 215, 218, 520 N.E.2d 198 (1988), citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). "Clear and convincing evidence is that measure or degree of proof * * * which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶ 12} "The question of whether a publication is defamatory * * * or is published with actual malice * * * is a question of law." *Early v. The Toledo Blade*, 130 Ohio App.3d 302, 319, 720 N.E.2d 107 (6th Dist.1998). "When making this legal determination, the trial court must 'review the statement under the totality of the circumstances.' *Mendise v. Plain Dealer Publishing Co.* (1990), 69 Ohio App.3d 721, 726, 591 N.E.2d 789, 792." *Id.* at 321.

6.

**Argument**

{¶ 13} Appellant argues appellees' statements that Board staff made a math error were false and said with actual malice. Appellant notes that Firelands was one of about a dozen contractors who received funds from the Board and oversight of the contracts and money was central to the job of the Board's executive director. Appellant contends reasonable minds could find the Board and Firelands concocted the math error story to cover up appellant's reason for hesitating to forward the disputed funds to Firelands, as appellant asserts he had reason to believe Firelands was seeking to maximize its benefits by moving 11 of its neediest clients out of the county.

{¶ 14} Appellant submits no Board members appear to have shown any interest in whether the math error statements were true or false. Appellant claims when the evidence is viewed in his favor, the math error statements should have signaled the Board that there was more to the story, and "[t]he recklessness of this oversight lead[s] to the mistaken belief that the $440,000 shortfall was attributed to Appellant's error rather than [Firelands'] failure to go through proper procedures." Appellant maintains the statements, which were concerning him, were made with reckless disregard for the truth.

**Deposition Testimony**

{¶ 15} The record includes the deposition testimony of appellant, Marsha Mruk, Lisa Crescimano and Elizabeth (Betsy) Wilbur. The relevant testimony is summarized below.

7.

**Appellant**

{¶ 16} Appellant testified two bases of his lawsuit were "the action of Firelands for sending people * * * out of the county" and the math error statements concerning Firelands. He stated "Firelands has said some things about me in writing that are clearly incorrect. * * * As it says in the paper, [Firelands] alleged that certain funds of money were not given to them because of a staff mathematical error. That's totally false." Firelands "repeatedly said that an amount of money, approximately $424,087, * * * was money that they were entitled to, which was absolutely false. And that it was a staff error by my staff and me that caused Firelands not to be able to embezzle this money." Also, "Firelands had no right to the funds * * * and they knew that, because we had done this before. And we had gone through the procedures as we do every year, of sending them a formal resolution from the board stating the contracts of the old year would be terminated and that they were, however, invited to apply for new contracts."

{¶ 17} Regarding the Board, appellant testified Wilbur, the Board chair, made statements which were in the newspaper "suggesting she had a wide range of issues against me, when they had nothing." The Board, in general, made a statement "[t]hat I was a bad administrator." Appellant was asked if he "had reason to believe that the board knew what Firelands was saying was untrue" and he responded no. In addition, appellant was asked if he "explain[ed] to the board at the disciplinary hearing why that [Board staff math error] statement was incorrect" and he replied in the negative.

8.

**Marsha Mruk**

{¶ 18} Mruk testified she has worked at Firelands since 1985, and has been the vice president of FCRS for seven or eight years. FCRS gets funding from the Board in exchange for services. The Board undertakes planning by looking at the services it is mandated to provide and what the community needs. The Board then decides what services it will provide and puts a contract out or a request for proposal. FCRS, as a provider, prepares a proposal.

{¶ 19} Mruk testified, regarding fiscal year 2017, new Board members were voted in and did not understand the process, as it is complex. The Board decided all of the agencies would receive the same amount as the previous year, and the Board extended the 2016 contracts by three months, then nine months. When FCRS received the nine-month contract from the Board, Mruk and her finance director noticed there was a $500,000 shortfall. Mruk's finance director spoke with Crescimano, they worked the numbers, and found an error. Mruk attended a Board finance committee meeting where Crescimano indicated there was a math error, an error in the spreadsheet, and people on the Board agreed. Mruk noted three-month and nine-month contracts are very difficult and cumbersome, so "[e]verybody can understand how an error is made. * * * [I]t was an error on * * * the Board's spreadsheet. It was corrected, and no one was blamed for it." The error "wasn't attributed to any one person - not Beth Williams [the Board's former finance director], not Dr. Halliday, an error in the spreadsheet, and people move on.

9.

That's as much attention as it got." Mruk agreed that no one on the Board or appellant told her that FCRS was going to perform less services in 2017.

{¶ 20} Mruk also mentioned the $500,000 shortfall in the nine-month budget to Betsy Wilbur, who was the Board chair; Wilbur was not aware of a decrease. Mruk explained the shortfall occurred due to shortages in two contracts, one for $440,000 and the other for $61,000. No one ever told Mruk that the $500,000 shortfall was money that appellant, as the executive director, had not allocated yet because he had not gone through the competitive bidding process.

{¶ 21} In an email Mruk received from Crescimano, Crescimano stated that when Williams "did the budget for fiscal year 2017, she based it on actual expenditures for '13, '14 and '15. * * * She did not have the actual for fiscal year '16, so she did not use that figure." Mruk testified that actual fiscal year 2016 should not have been used, rather budget fiscal year 2016 should have been used.

### Lisa Crescimano

{¶ 22} Crescimano testified she is the Board's Chief Financial Officer, and she started working for the Board on October 26, 2016. She described the state of the Board's finances at that time as a mess. The accounting financial system was archaic and crashed at the end of November 2016, and a new program was purchased. Also in November 2016, she spoke with Mruk who stated there was an error regarding approximately $440,000 that should have been budgeted to Firelands for 2017.

10.

Crescimano spoke with Beth Williams, who was training Crescimano. Williams, who had prepared the budget, opened some spreadsheets and said she, Williams, made an error.

{¶ 23} Crescimano testified that at the January 17, 2017 Board meeting, she reported to the Board that the fiscal year 2017 contract for FCRS needed to be increased due to an incorrect budget allocation previously given. She told the Board she had discussed it with Williams, and it was a math error. The Board made the correction in February 2017, which was easy, and the error did not cause a problem between Firelands and the Board. Crescimano was informed by the Board at either a finance committee meeting or a Board meeting that the contracts for 2017 were supposed to be the same amounts as they were in 2016. She was told "[a]ll of the other agencies received contracts at the same fiscal year '16 amounts."

{¶ 24} Crescimano testified appellant was responsible for overseeing Williams' work, but Crescimano did not have a conversation with appellant about the math error because he was under suspension. Crescimano had no knowledge that the amount Firelands said was an incorrect budget allocation was actually something appellant had intended to put for a competitive bid.

**Elizabeth Wilbur**

{¶ 25} Wilbur testified she was the chairman of the Board for two years, starting in the summer of 2016. The Board gets money from the state, taxes and grants and funnels the funds to providers. Regarding the math error concerning Firelands and the

11.

re-budgeting issue, Wilbur testified the Board had asked for strategic planning and did not get it, so the Board approved giving all of the providers a three-month contract. When the contract was converted to the next nine months, there was a math error, "so, now, we're correcting the problem that kind of we caused by breaking the year up." She could not recall the January 2017 Board meeting where the math error was mentioned. After the meeting, Firelands' contract was corrected, but Wilbur did not remember who told her that. "It's not a big thing * * * It isn't something we would talk about. It's not a big issue."

{¶ 26} Wilbur testified that at the February 21, 2017 Board meeting, the Board went into executive session, and appellant was terminated. When asked if other entities could have competitively bid on the roughly $424,000, Wilbur said no. Wilber did not discuss this sum with appellant and she never learned appellant did not intend for the money to be automatically allocated to Firelands, that he wanted to put it for a competitive bid.

**Analysis**

{¶ 27} We will focus our analysis on whether appellant has established, by clear and convincing evidence, that the Board staff math error and budget error statements were made with actual malice—whether the Board, Board members or Firelands knew the statements were false or made the statements with reckless disregard of the truth.

{¶ 28} Initially we observe there is no dispute that appellant was a public official and the Board staff math error and budget error statements concern matters for which

12.

appellant, as the executive director of the Board, was ultimately responsible. Therefore, we conclude the statements were of and concerning appellant.

{¶ 29} Our review of the record reveals there is no evidence that the Board or its members had knowledge that the Board staff math error or budget error statements were false. At deposition, appellant acknowledged he did not have reason to believe the Board knew what Firelands was saying was not true, nor did he explain to the Board why the statements were not correct. We therefore find appellant has not established, by clear and convincing evidence, that the Board or its members knew the statements were false.

{¶ 30} As to whether the statements were made by the Board or its members with reckless disregard, we find appellant failed to present clear and convincing evidence that the statements were made with a high degree of awareness of their probable falsity or that the Board or its members entertained serious doubts as to the truthfulness of the statements. The record shows the Board decided that all of the providers' contracts for 2017 would be the same amounts as they were in 2016. Crescimano informed the Board that FCRS' 2017 contract needed to be increased due to an incorrect budget allocation, and she had discussed the matter with Williams who said it was a math error. There is no evidence in the record that the Board or its members had any reason to disbelieve Crescimano or have serious doubts as to her representations that Williams, the Board's former financial director, indicated there was a math error.

{¶ 31} With respect to Firelands and its knowledge that the Board staff math error or budget error statements were false or were made with reckless disregard, a review of

13.

the record shows appellant testified that Firelands knew it was not entitled to the approximately $424,087, because every year the Board sent Firelands a formal resolution that the old year's contract would be terminated and it could apply for a new contract. However, both Crescimano and Mruk testified the Board stated all of the agencies' contracts for 2017 would be the same amounts as they were in 2016. Mruk testified she and her finance director discovered a $500,000 shortfall in the nine-month 2017 contract, so the finance director spoke with Crescimano. Crescimano testified Williams, who prepared the budget, said there was an error. In addition, Wilbur testified the Board gave three-month contracts to all of the providers but when Firelands' contract was converted to a nine-month contract, there was a math error.

{¶ 32} Based on the record, we find appellant has not demonstrated, by clear and convincing evidence, that Firelands knew the math error and budget error statements were false, that Firelands made the statements with a high degree of awareness of probable falsity or that Firelands entertained serious doubts as to the truthfulness of the statements. Since appellant has not established, by clear and convincing evidence, that appellees made the math error and budget error statements with actual malice, there is no genuine issue of material fact, and the Board, its members and Firelands are entitled to summary judgment as a matter of law. Accordingly, appellant's assignment of error is not well-taken.

**{¶ 33}** The judgment of the Erie County Court of Common Pleas is affirmed.

Appellant is ordered to pay costs of this appeal pursuant to App.R. 24.

                                                               Judgment affirmed.

      A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.                                        _____
                                                        JUDGE

Arlene Singer, J.

                                        _____
Gene A. Zmuda, P.J.                                                 JUDGE
CONCUR.

                                        _____
                                                         JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.