DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant/Cross-Appellee, Harry London Candies, Inc. ("London"), appeals the decision of the Summit County Court of Common Pleas granting summary judgment to Appellee/Cross-Appellant, Bernie Kosar Greeting Card Company ("Card Company"). The Card Company cross-appeals the trial court's determination of damages. We reverse.
 I.
This case arises from an agreement between London and the Card Company regarding Dawg Pound chocolate candies. On January 6, 2000, London filed a complaint seeking a judgment to declare the rights and obligations of London and the Card Company under their agreement and a judgment for breach of contract. London asserted that the Card Company agreed that Bernie Kosar ("Kosar") would promote the candy products and the Card Company breached the contract by failing to satisfy this contractual obligation. The Card Company answered and filed a counterclaim seeking damages under the theories of breach of contract, unjust enrichment and promissory estoppel. The Card Company asserted that London breached the contract by failing to pay it the guaranteed minimum payment according to the schedule contained in their agreement.
The Card Company moved for summary judgment on London's claims and its counterclaim. The Card Company argued that a July 20, 1999 Letter of Understanding was the complete and final agreement with London. The letter contains no provision regarding any obligation for Kosar to promote the candy products. London's opposition to the Card Company's summary judgment asserted that the July 20, 1999 letter represented only the financial agreement between the parties. On June 28, 2001, the trial court granted summary judgment to the Card Company finding that "[t]he record contains no evidence that Bernie Kosar ever agreed to promote this product." The trial court awarded damages to the Card Company on its counterclaim in the amount of $108,585.78.
This appeal and cross-appeal followed.
 II.
London's First Assignment of Error:
 The trial court erred in granting summary judgment in favor of defendant/appellee on plaintiff/appellant's claims because there were existing genuine issues of material fact.
In its first assignment of error, London argues that the trial court improperly weighed evidence in granting summary judgment to the Card Company. We agree.
To prevail on a summary judgment motion, the moving party "bears the initial burden of demonstrating that there are no genuine issues of material fact concerning an essential element of the opponent's case."Dresher v. Burt (1996), 75 Ohio St.3d 280, 292. If the movant meets this burden, the non-moving party must proffer evidence that some issue of material fact remains for the trial court to resolve. Id. at 293.
An appellate court reviews an award of summary judgment de novo.Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. Like the trial court, the appellate court must view the facts in the case in the light most favorable to the non-moving party. Viock v. Stowe-Woodward Co. (1983), 13 Ohio App.3d 7, 12. Any doubt must be resolved in favor of the non-moving party. Id.
The elements of a claim for breach of contract "include the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." Doner v. Snapp (1994),98 Ohio App.3d 597, 600. In the present case, the Card Company moved the trial court for summary judgment. In support of its motion for summary judgment, the Card Company provided, among other evidence, the July 20, 1999 Letter of Understanding and affidavits of Bernie Kosar, Sr., and Andrew Noch. The July 20, 1999 letter indicates the following agreed terms and conditions:
 1. BLKGCC [Bernie J. Kosar Greeting Card Company] is an approved Licensee of NFL Properties for the distribution of the following candy: [description of 7 types of candy products] * * *
 2. London will manufacture, distribute, and sell the above products.
 3. London shall pay BJKGCC a 16% royalty on all products sold. Payable monthly.
4. Term:
First Term: July 1, 1999 — March 31, 2000
Second Term: April 1, 2000 — March 31, 2001
 5. London shall guarantee a minimum of $82,500. [sic] for the First Term. London shall guarantee a minimum of $110,000. [sic] for the Second Term.
 6. London shall pay the First Term minimum guarantee as follows:
[November] 30, 1999 — $27,500.
December 31, 1999 — $27,500.
March 31, 2000 — $27,500.
 7. The Second Term minimum guarantee shall be paid monthly in an amount of $9,166.66.
 8. London shall keep accurate books of account and records and shall submit quarterly reports to BJKGCC. London shall make available to BJKGCC all books and records, ad BJKGCC shall have the right to examine and audit the financial records of London as pertains to the products herein.
 9. London shall comply with all the terms and conditions as set forth in the License Agreements between BJKGCC an NFLP as pertains to the products herein.
The letter does not include any terms or conditions regarding an obligation to promote the candy products.
In support of its opposition to the Card Company's motion for summary judgment, London supplied: 1) affidavits of Peter Young and Mark Stanish, 2) notes from a January 1, 1999 phone conference, 3) a January 16, 1999 draft proposal for the NFL chocolate program and 4) several press releases. Young is the president of London. His affidavit states that London would not have entered into an agreement with the Card Company regarding the candy products "without the absolute clear and explicit promise, commitment, and obligation that [Kosar] would participate in the promotion of the product line." Kosar's involvement in the promotion of the candy was a specific requirement to the contract,
 [b]oth before and after I signed the letter in August 1999[1] of the financial terms, Bernie Kosar's participation was explicitly discussed and agreed to as an integral part of the deal. We acted accordingly, and so did Kosar and others. According to representatives of Kosar, the NFL would not have licensed Dawg Pound
chocolates without the promise of Bernie Kosar's promotion of the product line. As well, Bernie Kosar's participation was a basis of the bargain that we at Harry London entered into.
The Card Company presented sufficient evidence to establish that the July 16, 1999 letter was the complete and final agreement between the Card Company and London. Having met the initial Dresher burden the burden shifted to London to offer specific facts showing a genuine issue for trial. Dresher, 75 Ohio St.3d at 293. In its opposition to the Card Company's motion for summary judgment, London offered evidence, in the form of Young's affidavit, that established a genuine issue of material fact regarding the complete and final nature of the agreement documented in the July 16, 1999 letter.
The evidence adduced both for and against the motions for summary judgment presented the trial court with two competing reasonable inferences as to the complete nature of the July 16, 1999 letter. The trial court, in granting summary judgment to the Card Company, necessarily resolved this conflict by weighing the evidence and choosing the inferences that favored the Card Company, the moving party. This was improper. In ruling on a motion for summary judgment the trial court is not permitted to weigh the evidence or choose among reasonable inferences. Dupler v. Mansfield Journal Co. (1980), 64 Ohio St.2d 116,121. Rather, the court must evaluate the evidence, taking all permissible inferences and resolving questions of credibility in favor of the non-moving party. Id.
When the evidence presented in this case is viewed in a light most favorable to London, the non-moving party, reasonable minds could come to differing conclusions regarding the complete and final nature of the written agreement between the parties. Accordingly, genuine issues of material fact exist, and the trial court's award of summary judgment was improper. London's first assignment of error is sustained.
 III.
London's Second Assignment of Error:
 The trial court erred in granting summary judgment in favor of defendant/appellee on defendant/appellee's counterclaims because there were existing genuine issues of material fact.
The Card Company's Assignment of Error:
 The judgment below should be modified to reflect additional damages for which the trial court found Harry London liable, but which accrued after the Greeting Card Company filed its motion for summary judgment, and before the trial court's June 28, 2001, [sic] order.
London's second assignment of error and the Card Company's assignment of error are related and will be considered together for ease of discussion. Both assignments of error deal with the trial court's grant of summary judgment on the Card Company's counterclaim and award of damages in the amount of $108,585.78. Having found in our disposition of London's first assignment of error that a genuine issue of material fact exists regarding the agreement between these parties, we find these two assignments of error that also relate to the same agreement are moot.
 IV.
Having sustained London's first assignment of error we reverse the trial court's decision granting summary judgment to the Card Company on London's claims and on the Card Company's counterclaim.
Judgment reversed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellee/Cross-Appellant.
Exceptions.
WHITMORE, J.
BATCHELDER, J. CONCUR
[1] The record reflects that the Letter of Understanding is dated July 20, 1999. However, Young approved and accepted the letter on August 25, 1999.