[Cite as *Richardson v. Girl Scouts of N.E. Ohio*, 2014-Ohio-1036.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

LYNN RICHARDSON, et al.

     Appellants

     v.

THE GIRL SCOUTS OF NORTH EAST
OHIO

     Appellee

C.A. No.     27127

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     2012 03 1636

DECISION AND JOURNAL ENTRY

Dated: March 19, 2014

WHITMORE, Judge.

{¶1}    Plaintiff-Appellants, Lynn Richardson, Lucia Hanigosky, Corey Ann Ringle, Lou Spilker, Kerrin Winter-Churchill, and Rachel Oppenheimer (collectively, "Appellants"), appeal from the judgment of the Summit County Court of Common Pleas, granting summary judgment in favor of Defendant-Appellee, The Girl Scouts of North East Ohio ("the GSNEO"). This Court affirms in part and reverses in part.

I

{¶2}    In 2007, the GSNEO formed through a merger of five existing Girl Scout Councils. Its Board began to develop a "strategic plan for guiding the future of the organization." As part of this plan, the Board performed various assessments of the camps owned by the GSNEO. For example, the Chief Financial Officer performed a financial evaluation of operations of the camps, and the Property Committee was tasked with the duty "to evaluate the camping property and to come up with a direction for the property that fits the

mission of the Girl Scouts." The Board also received input from Glenn Chin, a staff member of the Girl Scouts of America, who performed an evaluation of the camps and submitted a recommendation to the Board to sell certain properties. In 2009, the Board formed a membership led "Vision 2012" Committee. "The purpose of Vision 2012 [wa]s to assess the condition, value and programs that take place at camp properties, and make recommendations regarding the future use of the properties."

{¶3} Barbara Parkinson served on the Vision 2012 Committee. According to Parkinson, in March 2011, the Vision 2012 Committee informed the Board that it did not have enough data to make a recommendation. Parkinson testified that the Committee requested more time to collect data before making any recommendation. Parkinson further testified that, at the April 2011 meeting, a member of the Property Committee falsely informed the General Assembly that the Vision 2012 Committee had recommended that the GSNEO sell all but two of its camps. Surprised to hear the Board intended to pursue the sale of camps, members of the General Assembly called a special meeting.

{¶4} At the special meeting, held the same day as the October 2011 annual meeting, two resolutions were presented for a vote. The first resolution was to amend the Code of Regulations (the "Regulations") to require the Board to obtain an approval of two-thirds of the General Assembly before selling any real property. Because this proposal involved a change to the Regulations, a two-thirds affirmative vote from the General Assembly was required. This proposal did not receive the necessary votes to amend the Regulations. The second resolution did not involve a change to the Regulations and, therefore, only needed a majority of the voting members present at the meeting to pass. This second proposal read:

> a resolution requesting that the Board of Directors immediately cease and desist
> all activities in connection with the transfer of any real property held in the name

of [the GSNEO] until such time as any such pending, anticipated or planned transfers may be approved by a vote of two-thirds of the voting members of the General Assembly participating and voting at a meeting held pursuant to Article II Section 3 of the [Regulations].

This proposal passed, receiving a majority of the voting members' approval.

{¶5} At the regular meeting that immediately followed, the General Assembly again rejected a proposed amendment to the Regulations to require the Board to obtain the approval of two-thirds of the General Assembly before disposing of any real property owned by the GSNEO. The council then held its annual vote to elect members to the Board. The Regulations provide that the Board of Directors shall include "at least ten (10) but not more than fifteen (15) * * * Directors-at-Large." The Regulations, however, do not detail how the number of Directors-at-Large is to be set within that range. At the meeting, the Board informed the General Assembly that only five positions for Director-at-Large were to be filled, bringing the total Directors-at-Large to twelve. A member of the General Assembly objected and requested an explanation as to why the General Assembly could not elect eight Directors, to bring the total number of Directors to the maximum of fifteen. The Board stated that, according to the Regulations, the Board's Development Committee has the authority to set the number of Directors-at-Large within the permissible range. The Board told the General Assembly that any ballot with a selection of more than five Directors would be invalidated in its entirety.

{¶6} In December 2011, the Board, without seeking the approval of the General Assembly, voted to move forward with the sale of the various camps and began seeking bids from interested buyers.

{¶7} In March 2012, Appellants, as members of the GSNEO, filed an action seeking a declaration that: (1) the Board was bound by the resolution passed at the special meeting in October 2011 and, therefore, could not proceed with the sale of the camps without an approval of

two-thirds of the General Assembly; (2) that the General Assembly, and not the Board, has the right to select how many Director-at-Large positions should be filled within the range set by the Regulations; and (3) because the October 2011 election was improper, the Board did not have the power, right, or authority to act on behalf of the GSNEO and all its decisions subsequent to the October 2011 election are void. Additionally, Appellants sought an injunction to prohibit the Board from selling the camps.

{¶8} After a three day hearing, the court denied Appellants' request for a preliminary injunction. Subsequently, the GSNEO filed a motion for summary judgment. Appellants requested additional time to conduct discovery before responding to the GSNEO's motion for summary judgment and filed their memorandum in opposition forty-five days later. In October 2012, the court granted the GSNEO's motion for summary judgment, and Appellants filed an appeal. This Court dismissed the appeal because the judgment entry was not a final, appealable order. In September 2013, the trial court entered another order granting the GSNEO's motion for summary judgment. Appellants now appeal from that order and raise five assignments of error for our review. To facilitate the analysis, we rearrange several of the assignments of error.

II

Assignment of Error Number One

THE TRIAL COURT ABUSED ITS DISCRETION BY SEVER[E]LY LIMITING THE MEMBERS' OPPORTUNITY TO CONDUCT DISCOVERY.

{¶9} In their first assignment of error, Appellants argue that the court erred when it limited the areas they could pursue in discovery. Specifically, Appellants argue that the court "*sua sponte* determined three factual areas that it believed were relevant to responding to summary judgment" and limited discovery to those areas. Additionally, Appellants argue that the court limited their ability to conduct depositions.

{¶10} On June 20, 2012, the GSNEO filed a motion for summary judgment. Appellants responded with a request for an extension of time to conduct additional discovery. About a week later, the judge sent an email to the parties with a draft of an order granting Appellants' request for additional time and limiting the scope of discovery. The email indicated that the order would be "cleaned up" and filed on the following Monday. However, no such order was ever journalized. Appellants now cite to the email as evidence that the court limited discovery.

{¶11} The Ohio Supreme Court has repeatedly stated that "a court speaks exclusively through its journal entries." *In re Guardianship of Hollins*, 114 Ohio St.3d 434, 2007-Ohio-4555, ¶ 30. "It is axiomatic that an order must be journalized, or 'filed,' before it may be considered valid." *State v. Leason*, 9th Dist. Summit No. 25566, 2011-Ohio-6591, ¶ 8. "[I]n the absence of a time or date stamp from the clerk, the question is whether there is sufficient evidence from which a court may determine that the document was actually filed." *Zanesville v. Rouse*, 126 Ohio St.3d 1, 2010-Ohio-2218, ¶ 10, *vacated in part on other grounds*, 126 Ohio St.3d 1227, 2010-Ohio-3754.

{¶12} On review of the record, this Court cannot determine that the draft in the email was intended to be the final version of the order or that the court did not change its mind and decide against filing the order altogether. Because there is no evidence that an order limiting discovery was ever filed, this Court has nothing it can review. With no evidence of the court limiting discovery, Appellants' first assignment of error necessarily fails. Accordingly, Appellants' first assignment of error is overruled.

<u>Assignment of Error Number Three</u>

GENUINE ISSUES OF MATERIAL FACT EXISTED CONCERNING WHETHER GSNEO PROPERLY EXERCISED ITS BUSINESS JUDGMENT.

{¶13} In their third assignment of error, Appellants argue that the court erred in granting summary judgment because "there were sufficient facts to create an issue with respect to whether GSNEO's decision [to sell the camps] was predetermined and whether the data they purportedly relied upon was manipulated to justify the predetermined end result they desired."

{¶14} Pursuant to Civ.R. 56(C), summary judgment is proper if:

(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977). This Court reviews a trial court's decision to grant a motion for summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996).

{¶15} The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293 (1996). Once this burden is satisfied, the non-moving party bears the burden of offering specific facts to show a genuine issue for trial. *Id.* at 293.

{¶16} Appellants filed a complaint seeking a declaratory judgment and an injunction. Specifically, Appellants sought the following:

(a) An Order declaring that the Board is not authorized to proceed with efforts to sell the Girl Scout camps until a two-third (2/3) majority of the General Assembly votes to approve the contemplated sale of the Girl Scout camps[.]

(b) An Order declaring that the General Assembly is entitled to select the number of Directors, between ten (10) and fifteen (15) who will serve on the Board.

(c) An Order declaring that the Board does not have the power or authority to prevent the General Assembly from electing up to fifteen (15) Directors who will serve on the Board.

(d) An Order declaring that the Board did not have the power, right, or authority to serve or act on behalf of [the GSNEO] following the improper October 29, 2011 election, and all decisions of the Board following the October 29, 2011 election are void and of no legal effect.

Additionally, Appellants sought a preliminary and permanent injunction preventing the sale of real property owned by the GSNEO. Appellants asserted an injunction was appropriate because: (1) the Board is statutorily prohibited from selling more than 50% of the assets within a thirty-six month period; (2) the Board was not properly elected and therefore had no authority to sell the camps; and (3) the Board was required by the recently passed resolution to obtain the approval of two-thirds of the General Assembly before it could sell the camps.

{¶17} In their memorandum in opposition to the GSNEO's motion for summary judgment, and now on appeal, Appellants argue that there is a genuine issue of material fact as to whether the Board made the decision to sell the various camps without receiving input from the membership. Appellants appear to argue that the Board acted in bad faith in developing "patently false and misleading" statistics or, at the very least, made an uninformed decision when it voted to sell the camps. However, this argument does not raise an issue of *material* fact when considering the relief sought in the complaint.

{¶18} The court did not have to decide whether the Board acted in good faith when it made the legal determinations as to whether: (1) the recent General Assembly resolution was binding on the Board; (2) the General Assembly or the Board had the power to set the number of Directors-at-Large; and (3) what effect the allegedly improper election had on the subsequent Board decisions. Whether the Board was properly informed when it made its decision to sell the properties may be an issue of disputed fact, however, it is not material to the resolution of the issues raised in the complaint. Because this argument does not raise a genuine issue as to any

*material* fact that remains to be litigated, Appellants did not meet their reciprocal *Dresher* burden by raising this argument. *See Dresher*, 75 Ohio St.3d 280 at 293.

{¶19} Appellants' third assignment of error is overruled.

Assignment of Error Number Four

THE TRIAL COURT ERRED IN DETERMINING THAT GSNEO WAS NOT BOUND BY ITS MEMBER-PASSED RESOLUTION.

{¶20} In their fourth assignment of error, Appellants argue that the court erred in finding that the resolution passed by the General Assembly was not binding on the Board. We disagree.

{¶21} We incorporate the standard of review set forth above and review the trial court's decision to grant summary judgment de novo. *Grafton*, 77 Ohio St.3d at 105.

{¶22} The GSNEO's Regulations state that the General Assembly shall, "[i]n partnership with the Board of Directors, identify the general direction of Girl Scouting within the jurisdiction of the Council." The Regulations further provide that the Chairperson of the Board "shall be responsible for seeing that the lines of direction recommended by the General Assembly are acted upon by the Board and the actions of the Board of Directors are carried into effect." The Regulations permit the GSNEO to sell its property "according to the decision of the Board of Directors" provided that the sale does not violate any law or run afoul of certain tax exemptions. The Regulations may be amended or revised by an affirmative vote of two-thirds of the General Assembly.

{¶23} On October 29, 2011, the GSNEO held two meetings. First, the General Assembly convened a special meeting to address concerns regarding the possible sale of various camps owned by the GSNEO. This special meeting was immediately followed by the regular bi-annual meeting. At some point during the two meetings, votes on three proposals were taken. The first and third proposed resolutions were to amend the Regulations to require the Board to

obtain approval of two-thirds of the General Assembly before selling any real property. Because these proposals involved a change to the Regulations, a two-thirds affirmative vote from the General Assembly was required. Neither of the two proposals received the necessary votes to amend the Regulations. The second proposed resolution did not involve a change to the Regulations and, therefore, only needed a majority of the voting members present at the meeting to pass. This second proposal read:

> a resolution requesting that the Board of Directors immediately cease and desist all activities in connection with the transfer of any real property held in the name of [the GSNEO] until such time as any such pending, anticipated or planned transfers may be approved by a vote of two-thirds of the voting members of the General Assembly participating and voting at a meeting held pursuant to Article II Section 3 of the [Regulations].

This resolution passed, receiving a majority of the voting members' approval. Despite this resolution, the Board, in December 2011, without holding a vote of the General Assembly, voted to move forward with the sale of the various camps and issued requests for proposals, seeking bids from interested buyers.

{¶24} Appellants argue that the Board did not have the authority to proceed on the sale of the real property without the approval of two-thirds of the General Assembly as required by the recently passed member resolution. In support of their argument that the resolution "requesting" the Board to obtain approval was binding, Appellants highlight that the Regulations provide that the General Assembly shall work with the Board to "identify the general direction of Girl Scouting" and require the Chairman of the Board to "see[] that the lines of direction recommended * * * are acted upon by the Board." However, the Regulations also provide that real property may be sold "according to the decision of the Board." Moreover, the General Assembly twice rejected a proposed amendment to the Regulations that would require the Board to obtain a two-thirds approval of the General Assembly prior to transferring any real property.

**{¶25}** Reading the plain language of the resolution in conjunction with the plain language of the Regulations, we conclude that the resolution passed did not *require* the Board to obtain the approval of two-thirds of the General Assembly prior to proceeding with the sale of the camps. Therefore, Appellants' fourth assignment of error is overruled.

Assignment of Error Number Five

THE TRIAL COURT ERRED IN DETERMINING THAT THE GSNEO'S BOARD WAS PROPERLY ELECTED WHEN GSNEO PROHIBITED THE MEMBERS FROM CHOOSING THE NUMBER OF DIRECTORS-AT-LARGE TO BE ELECTED.

**{¶26}** In their fifth assignment of error, Appellants argue that the court erred in finding that the Development Committee had the power to set the number of Directors to be elected. Appellants further argue that because the election was improper, the Board's subsequent decisions are invalid.

**{¶27}** We incorporate the standard of review set forth above and review the trial court's decision to grant summary judgment de novo. *Grafton*, 77 Ohio St.3d at 105.

**{¶28}** Joan Villareal, the current chairperson of the GSNEO Board of Directors, testified that, prior to April 2009, the Regulations required fifteen Directors-at-Large. According to Villareal, the Regulations were amended in April 2009 to replace that fixed number with a range of "at least ten (10) but not more than fifteen (15) * * * Directors-at-Large." The Regulations, however, do not detail how the number of Directors-at-Large is to be set within that range.

**{¶29}** R.C. 1702.27(A)(2)(a) provides that "unless the articles or the regulations fix the number of directors or provide the manner in which that number may be fixed or changed by the voting members, the number may be fixed or changed at a meeting of the voting members called for the purpose of electing directors, if a quorum is present, by the affirmative vote of a majority of the voting members present in person * * *."

{¶30} The trial court found that "[p]rior to October 29, 2011[,] the GSNEO had established that there would be twelve Directors[-]at[-]Large." The court included a parenthetical that "[t]here was testimony at the hearing as to the rationale for this decision."[1] The trial court further found that while R.C. 1702.27(A)(2)(a) did not provide the "procedure to add or subtract from the then existing number of Directors previously set by the non-profit one can presume it requires the affirmative vote of a majority of the voting members present <u>at the meeting</u> on a Motion to expand the <u>number of Directors</u>." (Emphasis sic.) The court found that no motion to increase the number of directors was made, and therefore, the Board properly limited the election to the five open positions (for a total of twelve Directors-at-Large).

{¶31} R.C. 1702.27(A)(2)(a) does not require a special meeting to set the number of directors. The statute permits the change to be made at "a meeting of the voting members called for the purpose of electing directors." One of the reasons for the GSNEO's annual meeting is to elect directors. While there is no evidence in the record that a formal motion to change the number of directors was made at the meeting, there is evidence that the Board unequivocally informed the General Assembly that the Development Committee, and not the General Assembly, had the power under the Regulations to set the number of directors. While it is uncertain whether a majority of the General Assembly would have voted to increase the number of Directors-at-Large, it is apparent that the Board's misinterpretation of the Regulations prevented the General Assembly from requesting such a vote.

{¶32} The GSNEO argues that the Regulations must be read to grant the authority to select the number of Directors-at-Large to the Development Committee because without this

---

[1] Only partial transcripts were included in the record. The partial transcripts do not include any testimony about the GSNEO's decision or rationale to limit the number of Directors-at-Large to twelve.

authority it would be impossible for the Development Committee to fulfill its obligation to submit one recommendation for every open position.

{¶33} While the Regulations do not provide how the number of Directors will be set, it does provide two ways that a person may be considered as a candidate. First, a person may be recommended by the Board Development Committee, which is tasked with the duty "to recruit, review and confirm the qualifications of candidates for elected position in the Council." The Regulations require that the Development Committee recommend one candidate for each Director-at-Large position to be filled. Second, a member may be nominated. The Regulations require that a nominated person meet the qualifications established by the Development Committee, receive three written endorsements, provide written consent to serve, and submit his or her name to the Board at least five days in advance to the annual meeting. At the annual meeting, according to the Regulations, the Development Committee shall provide "a slate of one (1) candidate for each Officer to be elected[,]" and, after the committee presents its recommendations, the Chairperson of the Board "shall accept nominations from the floor."

{¶34} While we recognize that changing the number of open positions at the annual meeting is not ideal, it does not warrant a conclusion that the Development Committee, and not the General Assembly, has the authority to set the number of Directors-at-Large.

{¶35} The Regulations clearly detail the procedure necessary to be considered a candidate for a Director-at-Large position. The fact that the number of positions to be filled might change at the annual meeting does not alter the candidate qualification requirements. While it is possible to imagine a situation in which the Development Committee does not have a recommendation for every open position because of a late vote to change the number of positions available, this would not preclude a vote by the General Assembly to fill the position with a

properly nominated candidate. Alternatively, the Development Committee could fulfill its duty by coming to the annual meeting prepared to recommend candidates for the maximum possible number of Director-at-Large positions.[2]

**{¶36}** If at the close of the annual meeting there remained unfilled positions because there were not enough eligible candidates, the open positions would be considered vacant. If there is a vacancy in a Director-at-Large position, the Regulations provide that the open position shall be filled "upon nomination by the Board Development Committee * * * until the next Annual Meeting of the General Assembly by the affirmative vote of a majority of the remaining voting members of the Board of Directors."

**{¶37}** Nowhere in the Regulations does it grant the authority of the Development Committee to select the number of Directors-at-Large. To read the Regulations this way would allow the Development Committee to increase the number of Directors-at-Large immediately after the close of the Annual Meeting and then have the majority of the Board elect to fill those vacant positions with its nominations. This would effectively by-pass a vote of the General Assembly for a year, until the next annual meeting.

**{¶38}** Interpreting the language of R.C. 1702.27(A)(2)(a) and the Regulations, we conclude that the court erred in finding that the "existing Board did have statutory authority and Code authority to prevent the General Assembly from electing up to fifteen Directors." We, therefore, sustain Appellants' fifth assignment of error on this basis.

**{¶39}** We further conclude that the issues of whether the Board had the power, right, or authority to act on behalf of the GSNEO subsequent to the election and whether those decisions are legally void, were not considered by the trial court, and therefore, are not ripe for our review.

---

[2] At the October 29, 2011 annual meeting, for example, the Development Committee could have been prepared to recommend eight instead of five candidates.

<u>Assignment of Error Number Two</u>

THE TRIAL COURT CONSIDERED IMPROPER EVIDENCE AND DID NOT
APPLY THE CORRECT STANDARD IN GRANTING GSNEO'S SUMMARY
JUDGMENT MOTION.

**{¶40}** In their second assignment of error, Appellants argue that the court erred in weighing the credibility of the witnesses and considering notes that it had taken during the injunction hearing.

**{¶41}** We review the trial court's decision to grant summary judgment de novo. *Grafton*, 77 Ohio St.3d at 105. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. *Dresher*, 75 Ohio St.3d at 292-293. Once this burden is satisfied, the non-moving party bears the burden of offering specific facts to show a genuine issue for trial. *Id*. at 293. In reviewing whether each party has met its burden, the court may only consider evidence in "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any." Civ.R. 56(C). Further,

> [i]n ruling on a motion for summary judgment the trial court is not permitted to weigh the evidence or choose among reasonable inferences. *Dupler v. Mansfield Journal Co. Inc.*, 64 Ohio St.2d 116, 121 (1980). Rather, the court must evaluate the evidence, taking all permissible inferences and resolving questions of credibility in favor of the non-moving party. *Id*.

*Stewart v. Urig*, 176 Ohio App.3d 658, 2008-Ohio-3215, ¶ 10 (9th Dist.), quoting *Harry London Candies, Inc. v. Bernie J. Kosar Greeting Card Co.*, 9th Dist. Summit No. 20655, 2002 WL 185305, *3 (Feb. 6, 2002).

**{¶42}** The trial court's entry granting the GSNEO's motion for summary judgment is divided into four sections: (1) "Motions of October 29, 2011[,]" (2) "The Election of the Board

of Directors[,]" (3) "The Authority of the Board to Act on Behalf of the GSNEO after October 29, 2011[,]" and (4) "Contested Data."

{¶43} In the "Contested Data" section, the court addressed Appellants' arguments raised in their memorandum in opposition to summary judgment and stated that "[b]ecause of the oral hearing [the court] was able to judge the credibility of the Defense witnesses and to then view the documentation under this light." However, as discussed above in Appellants' third assignment of error, the arguments raised in their memorandum in opposition did not raise an issue of material fact with respect to the resolution of the claims asserted in the complaint. While we agree that it was an error for the court to judge the credibility of the witnesses, we conclude that the error here was harmless.

{¶44} Appellants further argue that the court erred when it considered evidence not provided for in Civ.R. 56(C). At the beginning of the judgment entry, the court explained that it considered evidence submitted at the injunction hearing as well as exhibits attached to the pleadings. However, at the end of the judgment entry, the court indicated that it had "reviewed the notes of the hearing on the Injunction; the exhibits attached to all pleadings; the various affidavits and the case law cited by the parties in this decision."

{¶45} We agree that the court erred in considering any notes from the injunction hearing because these notes are not permissible evidence under Civ.R. 56(C). However, because of our decision to reverse and remand the trial court's entry on the issues related to the election, we need only review the prejudicial effect of this error on the court's determination that the resolution was not binding on the Board. We reviewed this matter de novo in Appellants' fourth assignment of error and concluded that the resolution was not binding on the Board. Therefore, we cannot now conclude that Appellants suffered prejudice. *See Ciszewski v. Kolaczewski*, 9th

Dist. Summit No. 26508, 2013-Ohio-1765, ¶ 35 (error in considering unauthenticated documents harmless where summary judgment appropriate without considering the improper evidence).

**{¶46}** Appellants' second assignment of error, as it relates to the weighing of the credibility of the witnesses and to the improper evidence considered by the court in finding that the resolution was not binding, is overruled. Appellants' second assignment of error, as it relates to the court's consideration of improper evidence with respect to the rest of its decision, is not ripe for our review.

III

**{¶47}** Appellants' first, third, and fourth assignments of error are overruled. Appellants' second assignment of error related to the court's finding that the resolution was not binding is overruled. The remainder of Appellants' second assignment of error is not ripe for review. Appellants' fifth assignment of error is sustained as to the Board's authority to prevent the General Assembly from electing up to fifteen directors; the remainder of Appellants' fifth assignment of error is not ripe for review. The judgment of the Summit County Court of Common Pleas is affirmed in part, reversed in part, and the case is remanded for further proceedings consistent with the foregoing opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

_____
BETH WHITMORE
FOR THE COURT


HENSAL, J.
CONCURS.

BELFANCE, P. J.
CONCURS IN JUDGMENT ONLY.


APPEARANCES:

HAMILTON DESAUSSURE, JR. and KRISTEN S. MOORE, Attorneys at Law, for Appellants.

MICHAEL J. MATASICH and CATHY C. GODSHALL, Attorneys at Law, for Appellee.

DOUGLAS N. GODSHALL, Attorney at Law, for Appellee.